# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

|  |  |
|---|---|
| MICHAEL AMOS, PITRELL BRISTER, ANTONIO DAVIS, WILLIE FRIEND, CHARLES GAYLES, DANIEL GUTHRIE, JONATHAN J. HAM, DESMOND HARDY, BILLY JAMES, JR., JUSTIN JAMES, QUENTEN JOHNSON, DEAUNTE LEWIS, LARRY MAXWELL, TERRANCE MCKINNEY, DERRICK PAN, BRANDON ROBERTSON, KURIAKI RILEY, DERRICK ROGERS, TYREE ROSS, H.D. ALEXANDER SCOTT, DEANGELO TAYLOR, LEMARTINE TAYLOR, CONTI TILLIS, DEMARCUS TIMMONS, CARLOS VARNADO, PHILLIP DECARLOS WEBSTER, ADRIAN WILLARD, CURTIS WILSON, CALEB BUCKNER, WILLIAM GREEN, ARIC JOHNSON, IVERY MOORE, and KEVIN THOMAS, on behalf of themselves and all others similarly situated, | Civil Action No. 4:20-CV-007-DMB JMV<br><br>**FIRST AMENDED CLASS-ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Plaintiffs, |  |
| v. |  |
| TOMMY TAYLOR, in his official capacity as the Interim Commissioner of the Mississippi Department of Corrections, and MARSHAL TURNER, in his official capacity as the Superintendent of the Mississippi State Penitentiary, |  |
| Defendants. |  |

Plaintiffs MICHAEL AMOS, PITRELL BRISTER, ANTONIO DAVIS, WILLIE FRIEND, CHARLES GAYLES, DANIEL GUTHRIE, JONATHAN J. HAM, DESMOND HARDY, BILLY JAMES, JR., JUSTIN JAMES, QUENTEN JOHNSON, DEAUNTE LEWIS, LARRY MAXWELL, TERRANCE MCKINNEY, DERRICK PAN, BRANDON ROBERTSON, KURIAKI RILEY, DERRICK ROGERS, TYREE ROSS, H.D. ALEXANDER SCOTT, DEANGELO TAYLOR, LEMARTINE TAYLOR, CONTI TILLIS, DEMARCUS TIMMONS, CARLOS VARNADO, PHILLIP DECARLOS WEBSTER, ADRIAN WILLARD, CURTIS WILSON, CALEB BUCKNER, WILLIAM GREEN, ARIC JOHNSON, IVERY MOORE, and KEVIN THOMAS each individually and on behalf of all others similarly situated, by and through their undersigned attorneys, respectfully complain as follows against Defendants TOMMY TAYLOR, in his official capacity as the interim acting Commissioner of the Mississippi Department of Corrections ("MDOC"), and MARSHAL TURNER, in his official capacity as the Superintendent of the Mississippi State Penitentiary, as follows:

## INTRODUCTION

1.       The Mississippi State Penitentiary, also known as Parchman Farm (hereinafter "Parchman"), is operating in perpetual crisis under a state of degradation, filth, and inhumanity, endangering the health and safety of incarcerated inmates and staff alike daily.

2.       Plaintiffs' lives are in peril.  Individuals held in Parchman are dying because MDOC and Defendants, acting under color of state law as further set forth below, have failed to adequately staff, manage and maintain the prison's operations and facilities, resulting in prisons where violence reigns because prisons are out of control.  This month alone, so far, nine men incarcerated at Parchman have died—five as the result of rampant prison violence and three as the result of apparent suicide from the despair brought on by the seemingly hopeless conditions

of their confinement. These deaths are a direct result of Defendants' utter disregard for the people incarcerated and their constitutional rights.

3.     This unthinkable spate of deaths is the culmination of years of severe understaffing and neglect at Parchman. Mississippi has the third highest incarceration rate per capita of any U.S. state, with approximately 640 people living behind bars per 100,000 residents. As Mississippi has incarcerated increasing numbers of people, it has dramatically cut funding of prisons—reducing spending in this area approximately $185 million since 2014. The state has functionally divested from its correctional system, leaving those individuals who live and work within that system to pay the consequential deadly costs instead.

4.     Underfunding forces prisoners at Parchman to live in squalor, endangering their physical and mental health. Incarcerated inmates are regularly denied basic sanitary and hygienic conditions, such as functioning toilets and handwashing and bathing facilities, because Defendants' have allowed Parchman's facilities to deteriorate and decay beyond their useful lives. MDOC has failed to ensure that individuals incarcerated at Parchman are provided simple necessities.

5.     The units at Parchman are subject to frequent flooding from rain and overflowing plumbing, requiring Plaintiffs to live in and wade through standing water. Many cells and common areas suffer from roof leaks, inadequate plumbing, and often lack running water or electricity for days at a time. Many cells lack functioning toilets, constraining prisoners to defecate into plastic trash bags. Black mold and mildew permeates the units due to dilapidated conditions, poor ventilation and shoddy maintenance. Rats and mice infest the premises. The kitchen facilities at Parchman are abysmal; the most recent annual inspection by the Mississippi Health Department in June 2019 lambasts the conditions, finding containers of dried, spoiled and

molded food, flies and other pests, food maintained in coolers at unsafe temperatures, collapsing ceilings, and other unhealthy food preparation and storage conditions. Each of these conditions, by itself, places prisoners at a substantial risk of serious harm. Taken together, these conditions create an environment so toxic that they threaten the physical and mental health of all the prisoners exposed to them.

6.      Prior MDOC officials acknowledged in January 2019 that near-capacity prison populations and extreme staff vacancy rates had created a "staffing crisis," which threatened a "pressure cooker type situation" in Mississippi's three state-run prisons. Reportedly, Parchman had a staff vacancy rate of 42 percent at the time. MDOC's 2019 Annual Report shows that as of June 30, 2019, only 310 of 583 authorized security officer positions at Parchman were filled. Parchman is operating with little more than half the staff minimally required to operate it safely. Without adequate guards, prisons are plagued by rampant violence, with Plaintiffs fearing for their lives. Yet, MDOC has failed and refused to hire the necessary staff to operate Parchman properly.

7.      Defendants employees are incapable of monitoring and protecting inmates in their charge due to security staff shortages. Correctional officers seldom appear on the housing zones and prisoners are left sealed in their cells or common areas to fend for themselves. Consequently, prisoners are virtually unsupervised and Plaintiffs' basic needs have been disregarded as a result.

8.      Defendants deny prisoners even rudimentary medical care and mental health treatment. Many prisoners suffer from poorly treated or untreated medical and mental illnesses; access to timely, proper care and treatment is routinely ignored or denied. Prison guards refuse to answer distress calls from inmates. Setting fires is often the only way to get medical attention in emergencies. Suicide attempts are frequent; some are successful—as with Gabriel Carmen,

4

Thomas Lee and Joshua Norman each of whom was found hanging in his cell in Unit 29 at Parchman and determined by the Sunflower County Coroner to have died by apparent suicides on January 19, January 22, and January 26, 2020, respectively.

9.     Acts of violence are rampant throughout Mississippi's correctional system, including at Parchman. Deaths in MDOC custody, which were already higher than the rest of the country, continue to rise at an alarming rate—from 62 in fiscal year 2014 to 85 in 2018 then 80 in 2019 to now, January 2020, with nine deaths at Parchman alone—five as a result of inmate-on-inmate violence—days before month's end. On information and belief, Defendants have allowed vicious gangs to exert nearly total control over Parchman, controlling prisoners' access to food, mattresses, recreation and other prison services.  Indeed, it is believed that Defendants have failed to screen prison guards hired for gang affiliation, resulting in rival factions obtaining support from those entrusted with prison oversight and control.

10.     Even before the recent epidemic of deaths at Parchman, prisoners were regularly placed on extended lockdown because of violence and admitted understaffing. During lockdowns, Prisoners spend 22 hours a day or more in their cells for days and weeks at time with no access to recreation, showers, opportunities to interact with anyone else, no educational or rehabilitative programming, or visitation by family. These lockdowns affect incarcerated people indiscriminately, without respect to any security threats they pose or disciplinary infractions they have committed, and can start and end without warning. These lockdowns also prevent individuals from participating in programming and work that allows them to earn good time credit toward their sentences. Defendants' arbitrary failure or deliberate indifference to manage Parchman's facilities safely contributes to lengthier sentences for individuals who are abiding by the rules but are prevented from engaging in rehabilitative and educational programming.

11.    In short, Parchman is an extremely dangerous facility operating in a perpetual state of crisis, where prisoners live in barbaric and horrific conditions and their basic human rights are violated daily. Grossly inhumane conditions have cost many prisoners their health, sanity, and even their lives. Defendants, high-ranking MDOC officials, have known of the intolerable and abhorrent conditions at Parchman for years. They have repeatedly failed to take reasonable steps to protect the prisoners in their charge in spite of their constitutional obligation to protect the health and safety of those very individuals.

12.    Defendants have the duty and responsibility to provide safe and humane conditions for the prisoners in their charge. Nevertheless, inmates are subjected to sleeping on concrete and contaminated cellblock floors without bed mats or pillows; deprived of meals and clean water; and denied regular access to bathing facilities, basic hygiene items, medical and mental health care.

13.    The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment and is violated when prison officials fail to protect against prison-related violence and when prison conditions fail to meet basic human needs.    The conditions present a grave and imminent danger to Plaintiffs.

14.    The myriad unsafe and inhumane conditions at Parchman operate together to render inmates effectively deprived of shelter, sanitation, medical and mental health care, food, and protection from harm. These conditions are deliberately indifferent, unconstitutional and must be brought to an immediate end.

15.    By this action, Plaintiffs seek immediate relief from these unconstitutional conditions and redress of injuries suffered by them and the class they represent for deprivation

under color of state law of rights secured by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION

16.     This action arises under the United States Constitution and 42 U.S.C. § 1983. Jurisdiction proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4).

## VENUE

17.     Venue lies properly with this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District.

## PARTIES

### NAMED PLAINTIFFS

18.     All of the Plaintiffs are individuals currently incarcerated at the Mississippi State Penitentiary in Parchman, Mississippi  ("Parchman"), and, as set forth in the factual and class action allegations herein, bring this action on behalf of themselves and a class of prisoners currently confined at Parchman who are at a substantial risk of serious harm due to prison violence and squalid living which fall below the standards of human decency, inflict needless suffering on inmates confined there and which deprive them of educational and recreational opportunities.  More specifically, Plaintiffs seek declaratory and injunctive relief for deprivation under color of state law of the rights, privileges and immunities secured to them by the Constitution of the United States and in particular the Fifth, Eighth and Fourteenth Amendments thereof.

19.     Plaintiff MICHAEL AMOS is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

20.　　Plaintiff PITRELL BRISTER is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

21.　　 Plaintiff ANTONIO DAVIS is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

22.　　Plaintiff WILLIE FRIEND is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

23.　　Plaintiff CHARLES GAYLES is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

24.　　Plaintiff DANIEL GUTHRIE is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

25.　　Plaintiff JONATHAN J. HAM is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

26.　　Plaintiff DESMOND HARDY is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

27.　　Plaintiff BILLY JAMES, JR. is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

28.　　Plaintiff JUSTIN JAMES is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

29.     Plaintiff QUENTEN JOHNSON is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

30.     Plaintiff DEAUNTE LEWIS is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

31.     Plaintiff LARRY MAXWELL is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

32.     Plaintiff TERRANCE MCKINNEY is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

33.     Plaintiff DERRICK PAN is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

34.     Plaintiff BRANDON ROBERTSON is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

35.     Plaintiff KURIAKI RILEY is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

36.     Plaintiff DERRICK ROGERS is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

37.     Plaintiff TYREE ROSS is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

38.     Plaintiff H.D. ALEXANDER SCOTT is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

39.     Plaintiff DEANGELO TAYLOR is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

40.     Plaintiff LEMARTINE TAYLOR is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

41.     Plaintiff CONTI TILLIS is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

42.     Plaintiff DEMARCUS TIMMONS is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

43.     Plaintiff CARLOS VARNADO is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

44.     Plaintiff PHILLIP DECARLOS WEBSTER is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

45.     Plaintiff ADRIAN WILLARD is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

46.     Plaintiff CURTIS WILSON is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

47.     Plaintiff CALEB BUCKNER is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

48.     Plaintiff WILLIAM GREEN is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

49.     Plaintiff ARIC JOHNSON is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

50.     Plaintiff IVERY MOORE is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

51.     Plaintiff KEVIN THOMAS is a male inmate currently incarcerated in Parchman. He brings this Complaint on behalf of himself and the proposed Class as described herein.

## DEFENDANTS

52.     Defendant TOMMY TAYLOR is the appointed Interim Commissioner of MDOC.[1]   In that capacity, Defendant Taylor is ultimately responsible for the administrative and fiscal control and policymaking of the Department of Corrections, including at Parchman. His duties, responsibilities and authority as Interim Commissioner include: "[e]stablish[ing] the general policy of the Department" (§47-5-20); "implement[ing] and administer[ing] laws and policy related to corrections" (§47-5-28(a)); and "establish[ing] standards. . .and exercise[ing] the requisite supervision as it relates to correctional programs over all state-supported adult

---

[1] By statute, MDOC is "vested with the exclusive responsibility for management and control of the correctional system, and all properties belonging thereto" and "shall be responsible for the management of affairs of the correctional system and for the proper care, treatment, feeding, clothing and management of the offenders confined therein."  Miss. Code Ann. § 47-5-23.

correctional facilities" (§47-5-28(b)). As Interim Commissioner, Defendant Taylor is responsible for overseeing all aspects of Mississippi's correctional system and ensuring that all prisons under the jurisdiction of MDOC, including Parchman, operate in compliance with state and federal law. Defendant Taylor is sued in his official capacity. At all times relevant hereto, he has acted under color of state law. Additional allegations regarding Defendant Taylor's conduct are set forth herein.

53.    Defendant MARSHAL TURNER is Superintendent of the Mississippi State Penitentiary. In that capacity, Defendant Turner manages the day-to-day operations of Parchman. Defendant Turner is further responsible for the care, custody and protection of individuals including Plaintiffs. Defendant Turner has failed to take reasonable measures to abate the substantial risks of serious harm set forth herein despite knowledge and awareness of the existence of such problems throughout his tenure as Superintendent. Defendant Turner is sued in his official capacity. At all times relevant hereto, he has acted under color of state law.

## FACTS

54.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 53 as if fully set out herein.

55.    For years, Mississippi has dramatically underfunded its prisons. While the number of people in custody has increased, Mississippi has reduced funding by tens of millions of dollars each year.

56.    As a result, the Mississippi prison system as a whole is chronically understaffed. On average, nearly half of prison corrections official positions remain unfilled.

57.    A year ago, the MDOC issued a press release stating that the MDOC needed "help to address staffing." The MDOC described the precarious situation as an issue of "public

safety" that meant MDOC was "operating in a pressure cooker type situation." At the time, the "staffing crisis" at Parchman amounted to a forty-two percent staff vacancy rate. The staffing crisis has persisted.

58. These longstanding problems have in recent weeks reached a boiling point that imperils Plaintiffs and places them in imminent danger of serious physical injury. Five recent deaths in Mississippi's prisons exemplify the extreme risk of violence that Plaintiffs are currently facing. Three of those death occurred at Parchman in the first week of the year, with nine total deaths at Parchman this month alone.

59. Walter Gates, an inmate of Unit 29E at Parchman was stabbed multiple times the night of New Year's Eve, and pronounced dead just after midnight. Roosevelt Holliman was stabbed to death in a fight the next day. Denorris Howell, an inmate of Unit 29I at Parchman, was stabbed multiple times and pronounced dead the day after that. Timothy Hudspeth and James Talley, inmates housed in Unit 30 at Parchman, were pronounced dead from blunt force trauma on January 21, 2020 following an altercation with other inmates. Three inmates housed in Unit 29 at Parchman, Gabriel Carmen, Thomas Lee and Joshua Norman, died on January 19, January 22, and January 26, 2020, respectively. All three inmates apparently died by hanging according to the Sunflower County Coroner.

60. The county coroner described the recent spate of violence at Parchman as "unprecedented," noting that so many were injured in the prison violence that the Parchman medical facility was unable to accommodate them all.

61. The understaffing at Parchman presents an imminent risk to Plaintiffs. Every day presents the possibility of yet another preventable death.

62.    The federal government has recognized that understaffing of these levels presents a substantial risk of imminent harm.  In April 2019, the Department of Justice issued a report concerning Alabama's Department of Corrections (the "ADOC").  Despite the fact that the ADOC overall actually had a staffing ratio higher than the ratio at Parchman, the Department of Justice report described the lack of prison guards at ADOC as an "egregious level of understaffing" with "inadequate supervision that results in a substantial risk of serious harm."

63.    The neglected state of prison facilities fosters an environment for violence. Parchman is overcrowded and has insufficient mattresses for its population, leaving inmates sleeping on the floor.  The prison units have been flooded and are now covered in black mold. The physical facilities reflect the scars of neglect, with light fixtures missing and holes in the walls.  Toilets back up, resulting in floors covered with raw sewage.  Electricity and running water are provided only sporadically.  At Parchman, drinking water repeatedly has failed to meet federal safety standards.  The prison's sewage system is in such disrepair that it has been cited for violating the federal Clean Water Act.

64.    The kitchen facilities at Parchman are abysmal; the most recent annual inspection by the Mississippi Health Department in June 2019 lambasts the conditions, finding containers of dried, spoiled and molded food, flies and other pests, food maintained in coolers at unsafe temperatures, collapsing ceilings, and other unhealthy food preparation and storage conditions.

65.    In its June 2019 inspection of Parchman the Mississippi Department of Health further found "more than 400 cells with problems such as flooding and leaks, lack of lights, power and water, broken toilets and sinks, broken windows and bird nests, as well as missing pillows and mattresses."  Flies and moldy food containers and improper food storage were documented.  Hundreds of other environmental deficiencies were also identified by the

inspection, including exposed wiring and mildew. MDOC itself has described Unit 29 of Parchman as "unsafe for staff and inmates because of age and general deterioration."

66. Inmates in Unit 29 were not allowed to shower for weeks beginning on Christmas Day, December 25, 2019.

67. Certain inmates and Plaintiffs are being denied visits to the medical unit for daily or critical care; and, for some, weeks have gone-by without medication.

68. There is only one guard (usually female) for each building (160 inmates) at Unit 29.

69. Rats and cockroaches crawl over inmates while they sleep and attack their food.

70. Toilets overflow with sewage which spills out and remains on the floors.

71. Potable water from available sources is contaminated with human waste and brown in color.

72. Rain leaks from the roof streaming through multiple cells and causing black mold to grow on walls and surfaces where inmates sleep.

73. At times there are no meals, and sometimes only one per day.

74. When served, the "food" is cold, rotten, and often containing rocks, insects, bird droppings, and rat feces.

75. Lone guards cannot, and will not, enter Unit 29 buildings to prevent violence or even render much needed emergency medical assistance.

76. Finally, inmates are resorting to setting fires to compel officials to enter their building and, hopefully, render life-saving care to fellow inmates who are sick and dying.

77. These conditions, in and of themselves, present a serious risk of imminent harm. They threaten the health of the people living within Parchman's walls and put them at a substantial risk of developing chronic and serious illnesses.

78. The factual allegations set forth in paragraphs 55 through 77 have been obvious and known to Defendants for a substantial period of time, with notice provided by numerous individuals and agencies; yet Defendants have failed to adequately address the conditions described.

## CLASS ACTION ALLEGATIONS

79. Plaintiffs bring this action on their own behalf and, pursuant to Rules 23(a), 23(b)(1), and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of a class of all prisoners who are now, or will in the future be, subjected to the degrading policies and practices of MDOC and filthy, inhumane conditions endangering prisoner health and safety for the duration of their incarceration at Parchman, ("the proposed Class").

*Numerosity/Impracticality of Joinder: Fed. R. Civ. P. 23(a)(1)*

80. The proposed class is so numerous that joinder of all proposed Class Members is impracticable. Fed. R. Civ. P. 23(a)(1). On information and belief, approximately 3000 prisoners are presently incarcerated under custody of MDOC at Parchman, all of whom are or were subject to the conditions set forth herein and therefore face a significant risk of serious illness and injury.

81. Class members are identifiable using records maintained in the ordinary course of business by MDOC.

*Commonality: Fed. R. Civ. P. 23(a)(2)*

82. Common questions of law and fact exist as to all proposed Class Members. Such questions include but are not limited to:

a)      Whether the unhygienic and dangerous conditions at Parchman subject the proposed Class to an ongoing, substantial, and imminent risk of physical and psychological harm, illness, and death;

b)      Whether Defendants have been deliberately indifferent to the serious health care needs of class members;

c)      Whether Defendants have been deliberately indifferent to the actual and serious risk of mental and physical health and/or suffering of the proposed Class;

d)      The nature, scope, and operation of Defendants' practices, policies and customs as applied to prisoners incarcerated at Parchman;

e)      Whether Defendants maintain a policy, custom, and/or widespread practice of violating the proposed Class' constitutional rights through exposure to the dangerous conditions at Parchman;

f)      Whether Defendants failure to hire, train, and/or supervise competent security staff resulted in violations of the proposed Class' constitutional rights; and,

g)      Whether the totality of conditions at Parchman violate the Eighth Amendment's prohibition of cruel and unusual punishment.

*Typicality: Fed. R. Civ. P. 23(a)(3)*

83.     The claims of the Plaintiffs are typical of those of the Plaintiff Class, as their claims arise from the same policies, practices, or courses of conduct; and their claims are based on the same theory of law as the class's claims.

*Adequacy: Fed. R. Civ. P. 23(a)(4)*

84.     Plaintiffs are capable of fairly and adequately protecting the interests of the Plaintiff class because Plaintiffs do not have any interests antagonistic to the class. Plaintiffs, as

well as the Plaintiff class members, seek to enjoin the unlawful acts and omissions of Defendants. Finally, Plaintiffs are represented by counsel experienced in civil rights litigation, prisoners' rights litigation, and complex class action litigation.

*Fed. R. Civ. P. 23(b)(1) and/or (2)*

85.     The proposed Classes should also be certified under Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2) because:

a)     The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members that would establish incompatible standards of conduct for Defendants;

b)     The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c)     Defendant has acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final and injunctive relief with respect to the Class Members as a whole.

## CLAIMS FOR RELIEF

**First Claim for Relief**
**(Eighth Amendment and 42 U.S.C. § 1983: Environmental Conditions)**

86.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 85 as if fully set out herein.

87.     At all relevant times herein, Defendants were "persons" for purposes of 42 USCA § 1983, and acted under color of law to deprive Plaintiffs of their Constitutional rights, as set forth more fully below.

88.     Defendant Taylor, as Interim Commissioner of MDOC, was aware of, and acquiesced in, the unconstitutional restrictions and conditions of Plaintiffs' confinement at Parchman as set forth below, and failed to take necessary and appropriate action. Defendant Taylor therefore subjected or caused Plaintiffs to be subjected to unconstitutional conditions and restrictions, and demonstrated deliberate indifference.

89.     Defendant Turner, as Superintendent of Parchman was aware of, and acquiesced in, the unconstitutional restrictions and conditions of Plaintiffs' confinement at Parchman set forth below. Defendant Turner was directly responsible for operating, managing, and maintaining Parchman and is therefore directly responsible for said unconstitutional restrictions and conditions. Defendant Turner therefore subjected or caused Plaintiffs to be subjected to unconstitutional conditions and restrictions of confinement, and demonstrated deliberate indifference.

90.     Roaches, mice, insects and other vermin have been in various areas of the State Penitentiary throughout the period of Plaintiffs' confinement.

91.     Throughout the winter there has been no heat, and inmates are not allowed to wear extra clothing or receive the necessary number of blankets.

92.      By their policies and practices described herein, Defendants subject Plaintiff and the proposed Class to substantial risk of serious harm and injury from dangerous environmental conditions, including, but not limited to, vermin, exposure to mold and other toxic substances that endanger health, filthy cells and fixtures, broken plumbing, inoperable lighting, lack of electricity, and inadequate ventilation.

93.     These policies and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them

under color of state law, in their official capacities, and are the cause of Plaintiffs' and the proposed Class' ongoing deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

94.     Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

**Second Claim for Relief**
**(Eighth Amendment and 42 U.S.C. § 1983: Protection from Harm)**

95.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 94 as if fully set out herein.

96.     At all relevant times herein, defendants were "persons" for purposes of 42 USCA § 1983, and acted under color of law to deprive Plaintiffs of their Constitutional rights, as set forth more fully below.

97.     Defendant Taylor, as Interim Commissioner of MDOC, was aware of, and acquiesced in, the unconstitutional restrictions and conditions of Plaintiffs' confinement at Parchman as set forth below, and failed to take necessary and appropriate action. Defendant Taylor therefore subjected or caused Plaintiffs to be subjected to unconstitutional conditions and restrictions, and demonstrated deliberate indifference.

98.     Defendant Turner, as Superintendent of Parchman was aware of, and acquiesced in, the unconstitutional restrictions and conditions of Plaintiffs' confinement at Parchman set forth below. Defendant Turner was directly responsible for operating, managing, and maintaining the Parchman and is therefore directly responsible for said unconstitutional restrictions and conditions. Defendant Turner therefore subjected or caused Plaintiffs to be subjected to unconstitutional conditions and restrictions of confinement, and demonstrated deliberate indifference.

99.      By their policies and practices described herein, Defendants subject Plaintiffs and the proposed Class to a substantial risk of serious harm by failing to protect them from violence, ignoring, by act or omission emergency situations, and enabling violent attacks within prison walls. These policies and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the cause of Plaintiffs' and the proposed Class' ongoing deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

100.      Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

### Third Claim for Relief
### (Eighth Amendment and 42 U.S.C. § 1983: Nutrition and Food Safety)

101.      Plaintiffs reallege and incorporate by reference paragraphs 1 through 100 as if fully set out herein.

102.      At all relevant times herein, defendants were "persons" for purposes of 42 USCA § 1983, and acted under color of law to deprive Plaintiffs of their Constitutional rights, as set forth more fully below.

103.      Defendant Taylor, as Interim Commissioner of MDOC, was aware of, and acquiesced in, the unconstitutional restrictions and conditions of Plaintiffs' confinement at Parchman as set forth below, and failed to take necessary and appropriate action. Defendant Taylor therefore subjected or caused Plaintiffs to be subjected to unconstitutional conditions and restrictions, and demonstrated deliberate indifference.

104.      Defendant Turner, as Superintendent of Parchman was aware of, and acquiesced in, the unconstitutional restrictions and conditions of Plaintiffs' confinement at Parchman set

forth below. Defendant Turner was directly responsible for operating, managing, and maintaining the Parchman and is therefore directly responsible for said unconstitutional restrictions and conditions. Defendant Turner therefore subjected or caused Plaintiffs to be subjected to unconstitutional conditions and restrictions of confinement, and demonstrated deliberate indifference.

105.    By their policies and practices described herein, Defendants subject Plaintiffs and the proposed Class to substantial risk of serious harm and injury by providing inadequate nourishment to maintain health and serving food in an unsanitary and unsafe manner.

106.    A 2019 Mississippi Department of Health inspection of Parchman documented improper food storage, moldy food containers and flies in Parchman's food preparation and service area. The kitchen facility itself is unclean and unsanitary.

107.    Over and over again Plaintiffs find insects, rocks, bird droppings, and other contaminants in food from the Parchman kitchen. They have observed cockroaches and mice where food trays are stacked prior to their distribution to inmates. Neither the kitchen workers nor the food servers wear hair nets.

108.    Plaintiffs meals are frequently served cold and they are periodically denied meals altogether.

109.    These policies and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them 1mder color of state law, in their official capacities, and are the cause of Plaintiffs' and the proposed Class' ongoing deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

110.   Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

**Fourth Claim for Relief**
**(Eighth Amendment and 42 U.S.C. § 1983: Health Care)**

111.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 110 as if fully set out herein.

112.   At all relevant times herein, defendants were "persons" for purposes of 42 USCA § 1983, and acted under color of law to deprive Plaintiffs of their Constitutional rights, as set forth more fully below.

113.   Defendant Taylor, as Interim Commissioner of MDOC, was aware of, and acquiesced in, the unconstitutional restrictions and conditions of Plaintiffs' confinement at Parchman as set forth below, and failed to take necessary and appropriate action. Defendant Taylor therefore subjected or caused Plaintiffs to be subjected to unconstitutional conditions and restrictions, and demonstrated deliberate indifference.

114.   Defendant Turner, as Superintendent of Parchman was aware of, and acquiesced in, the unconstitutional restrictions and conditions of Plaintiffs' confinement at Parchman set forth below. Defendant Turner was directly responsible for operating, managing, and maintaining Parchman and is therefore directly responsible for said unconstitutional restrictions and conditions. Defendant Turner therefore subjected or caused Plaintiffs to be subjected to unconstitutional conditions and restrictions of confinement, and demonstrated deliberate indifference.

115.   By their policies and practices described herein, Defendants subject Plaintiffs and the proposed Class to substantial risk of serious harm and injury from inadequate medical care, including dental care, optical care, and other health-related services.

23

116.    Defendants have a policy and practice of failing to provide prisoners with medically necessary care to address ongoing medical needs or diseases. Medical attention and care at the institution is wholly inadequate. The deficiencies are systematic. Plaintiffs cannot not obtain routine medical, dental or optical care upon request. Frequently, Plaintiffs have to submit grievances in order to receive medical attention from physicians.

117.    Defendants' deliberate indifference to their systemic failure to properly treat or manage prisoners' chronic illnesses exacerbates prisoners' conditions, and frequently leads to preventable permanent injuries or deaths.

118.    Plaintiffs routinely suffer serious medical problems for extension periods of time before receiving medical attention.

119.    Prisoners wait months or longer for basic dental and optical treatment and suffer significant pain, worsening symptoms, and other harm.

120.    Defendants also have a policy and practice of not providing medical diets ordered by clinicians for prisoners with chronic conditions such as high blood pressure, high cholesterol, kidney failure, and diabetes. Instead, all prisoners, including those with chronic conditions requiring special diets, are given a nutritionally inadequate, high-fat and high-sodium diet.

121.    Defendants have a policy and practice of failing to mitigate the risk of infectious and communicable diseases, such as HIV and Hepatitis C. Defendants fail to maintain basic sanitation to prevent the exacerbation of chronic conditions and the spread of infectious diseases. Many sections of Parchman are filthy, fail to meet basic sanitation standards, and expose prisoners to serious, and sometimes fatal, communicable diseases. These conditions include urine-soaked mattresses, uncontrolled infestations of vermin, and cell walls and floors covered with black mold or smeared with the feces, spit, and blood of other inmates. Prisoners with cuts

or other injuries to their bodies have contracted serious infections from the unsanitary conditions of the prison.

122.    These policies and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the cause of Plaintiffs' and the proposed Class' ongoing deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

123.    Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

### Fifth Claim for Relief
### (Eighth Amendment and 42 U.S.C. § 1983: Mental Health Care)

124.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 123 as if fully set out herein.

125.    At all relevant times herein, defendants were "persons" for purposes of 42 USCA § 1983, and acted under color of law to deprive Plaintiffs of their Constitutional rights, as set forth more fully below.

126.    Defendant Taylor, as Interim Commissioner of MDOC, was aware of, and acquiesced in, the unconstitutional restrictions and conditions of Plaintiffs' confinement at Parchman as set forth below, and failed to take necessary and appropriate action. Defendant Taylor therefore subjected or caused Plaintiffs to be subjected to unconstitutional conditions and restrictions, and demonstrated deliberate indifference.

127.    Defendant Turner, as Superintendent of Parchman was aware of, and acquiesced in, the unconstitutional restrictions and conditions of Plaintiffs' confinement at Parchman set forth below. Defendant Turner was directly responsible for operating, managing, and

maintaining Parchman and is therefore directly responsible for said unconstitutional restrictions and conditions. Defendant Turner therefore subjected or caused Plaintiffs to be subjected to unconstitutional conditions and restrictions of confinement, and demonstrated deliberate indifference.

128. Defendants have a policy and practice of failing to provide and/or denying prisoners with adequate mental health care, and are deliberately indifferent to the fact that the systemic failure to do so results in injury and a substantial risk of serious harm to prisoners. Because of chronic understaffing, suicidal and mentally ill prisoners have insufficient interactions with psychiatrists; many receive at most a five- or ten-minute interactions once or twice a year. As a result, clinicians cannot make informed decisions about care.

129. Since they possess at most a glancing familiarity with their patients, clinicians are unable to meaningfully evaluate crucial decisions affecting safety and health, such as the clinical appropriateness of indefinite confinement in units that hold prisoners in long-term isolation with minimal opportunities for human interaction.

130. Moreover, Defendants have a policy and practice of housing prisoners s in unsafe conditions that heighten their risk of suicide.

131. By their policies and practices described herein, Defendants subject Plaintiffs and the proposed Class to a substantial risk of serious harm and injury from inadequate mental health care. These policies and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the cause of Plaintiffs' and the proposed Class' ongoing deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

132.    Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

## PRAYER FOR RELIEF

Plaintiffs and the class and subclasses they seek to represent have no adequate remedy at law to redress the wrongs suffered as set forth in this complaint. Plaintiffs and the proposed Class they seek to represent have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of Defendants Taylor and Turner, as alleged herein, unless this Court grants the relief requested. The need for relief is critical because the rights at issue are paramount under the United States Constitution and the laws of the United States.

WHEREFORE, Plaintiffs pray that this Honorable Court grant the following relief:

A.    Declare that the suit is maintainable as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1) and/or (2);

B.    Adjudge and declare that the acts, omissions, policies, and practices of Defendants, and their agents, employees, officials, and all persons acting in concert with them under color of state law or otherwise as described herein are in violation of the rights of Plaintiffs and the proposed Class they seek to represent under the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution and federal law;

C.    Preliminarily and permanently enjoin Defendants, their agents, employees, officials, and all persons acting in concert with them under color of state law, from subjecting Plaintiffs and the proposed Class they seek to represent to the illegal and unconstitutional conditions, acts, omissions, policies, and practices set forth above;

D.　　　　Order Defendants to develop and implement, as soon as practical, a plan to eliminate the substantial risks of serious harm that Plaintiffs and members of the class suffer due to filthy and dangerous environmental conditions, failure to protect prisoners from violence, malnutrition and/or unsanitary food preparation and delivery, inadequate medical (including dental and optical) and mental health care. Defendants' plan shall include at a minimum the following:

      i.　　　　Environmental Conditions: Housing prisoners in safe and clean conditions free from filth and vermin and with adequate access to exercise, outdoor recreation, showers, lighting, sanitation, plumbing, ventilation, and other basic human needs required by dignity, civilized standards, humanity, and decency;

      ii.　　　　Protection from Harm: Protection of prisoners from harm by other prisoners and failing to timely respond to emergency conditions by, inter alia, assuring an adequate level of properly trained staff;

      iii.　　　　Nutrition and Food Safety: Provision to prisoners of nutritionally adequate meals prepared and served in a safe and sanitary manner;

      iv.　　　　Medical Care: Provision of timely access to adequate medical care, including services such as dental and optical care, to treat serious health needs and to abate a substantial risk of serious harm;

      v.　　　　Mental Health Care: Provision of timely access to adequate treatment for serious mental illness, including, but not limited to, medication, therapy, inpatient treatment, suicide prevention, and suicide watch in a manner that abates a substantial risk of serious harm; and

vi.    Accountability, Oversight, and Monitoring: Adequate monitoring and timely remediation of the performance of any and all private prison contractors, including health contractors, to whom Defendants delegate the operation of Parchman.

E.    Award Plaintiffs the costs of this suit, and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and other applicable law;

F.    Retain jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction; and

G.    Award such other and further relief as the Court deems just and proper.


This the 28th day of January, 2020.


Respectfully submitted,

*/s/ Marcy B. Croft*
Marcy B. Croft (MS Bar #10864)
Carson H. Thurman (MS Bar #104871)
MARON MARVEL BRADLEY ANDERSON
& TARDY LLC
200 South Lamar Street
Jackson, MS 39201
Telephone: (601) 960-8630
Telefax: (601) 206-0119

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing was filed via ECF which automatically serves a copy on all counsel of record, including counsel for the Defendants:

RESPECTFULLY SUBMITTED, this the 28th day of January, 2020.

_/s/ Marcy B. Croft_
Marcy B. Croft (MS Bar #10864)
Carson H. Thurman (MS Bar #104871)