EXHIBIT K

DECLARATION OF CRAIG HANEY, PH.D., J.D.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

| | |
|---|---|
| MICHAEL AMOS, PITRELL BRISTER, ANTONIO DAVIS, WILLIE FRIEND, CHARLES GAYLES, DANIEL GUTHRIE, JONATHAN J. HAM, DESMOND HARDY, BILLY JAMES, JR., JUSTIN JAMES, QUENTEN JOHNSON, DEAUNTE LEWIS, LARRY MAXWELL, TERRANCE MCKINNEY, DERRICK PAN, BRANDON ROBERTSON, KURIAKI RILEY, DERRICK ROGERS, TYREE ROSS, H.D. ALEXANDER SCOTT, DEANGELO TAYLOR, LEMARTINE TAYLOR, CONTI TILLIS, DEMARCUS TIMMONS, CARLOS VARNADO, PHILLIP DECARLOS WEBSTER, ADRIAN WILLARD, CURTIS WILSON, CALEB BUCKNER, WILLIAM GREEN, ARIC JOHNSON, IVERY MOORE, and KEVIN THOMAS, on behalf of themselves and all others similarly situated,<br>　　　　　　　　　　Plaintiffs,<br>　　　v.<br>TOMMY TAYLOR, in his official capacity as the Interim Commissioner of the Mississippi Department of Corrections, and MARSHAL TURNER, in his official capacity as the Superintendent of the Mississippi State Penitentiary,<br>　　　　　　　　　　Defendants. | Case No. 4:20-CV-007-DMB-JMV |

## DECLARATION OF CRAIG HANEY, PH.D., J.D.

On this 31st day of January, 2020, I hereby declare:

1. My name is Craig Haney, and I currently live in Santa Cruz, California.

2. I am a professor of psychology at the University of California, Santa Cruz. I am also a Distinguished Professor in the University of California system, a distinction reserved for professors who have reached the very highest level of the professoriate, after being nominated by our respective universities and undergoing a national and international review. In addition, I

currently serve as the UC Presidential Chair, 2015-2018, an honor bestowed on typically one faculty member from each University of California campus, in recognition of the distinguished nature of their research program.

3. For over forty years I have also served as a consultant on criminal justice matters for state and local governments, as well as the federal government and expert bodies and associations (including the Department of Homeland Security), and have served in numerous state and federal court cases as an expert witness on prison and jail conditions. I have testified before the United States Senate, the U.S. House of Representatives, and various state legislatures about prison, jail, and detention conditions.

4. In the course of this criminal justice-related work, I have toured and inspected and interviewed prisoners and staff in numerous correctional facilities, in several dozen states and a number of foreign countries (including Canada, Great Britain, Hungary, Ireland, Netherlands, and Norway). The facilities that I have toured include the highest-level security institutions in the world, including many so-called "supermax" prisons (such as the Marion "Control Unit, and the Security Housing Unit at Pelican Bay, California), as well as the federal Administrative Maximum ("ADX") facility in Florence, Colorado. I have also previously been inside Parchman in Unit 29 and Unit 42.

5. I have never been involved in a security-related incident or breach in any of these inspections- neither having caused or created a security concern, or experienced one caused by others. Prior to my inspections in this matter, I commit to notify administrators and my assigned escorts that I am comfortable in the correctional environment but should they have any concern during the tour, to immediately let me know and I will obey their direction.

6. In my professional opinion, in order to provide the Court with a preliminary opinion about the current nature of conditions of confinement and the treatment of prisoners at the Mississippi State Penitentiary is essential that experts such as myself be given access to the facility itself and to the prisoners confined there. Based on my past experience, although these kinds of tours and interviews may vary somewhat, from case-to-case, they virtually always entail:

   a) The opportunity to tour and inspect all of the areas of the facility to which the plaintiffs are allowed access and that they might encounter in the course of their confinement;

   b) The opportunity to briefly converse cell-front with prisoners in the course of the tour/inspection;

   c) The presence of a knowledgeable staff member who can briefly answer basic questions about the facility's operations and practices (e.g., the amount of time prisoners in a particular unit are allowed outside their cells).

   d) Individual, confidential interviews with a sample of prisoners who have more extensive or specialized experiences within the institution (e.g., prisoners on the mental health caseload);

   e) Access to the entire prison files of prisoners interviewed cell-front or confidentially.

7. Based on past experience, I believe that these things – as well as the inspections requested by my colleagues in this matter which can be taken in a tier-ed approach as to not overload Parchman's resources – can be completed at the Mississippi State Penitentiary at Parchman in Unit 29, Unit 30, Unit 32, and Unit 42 in a period of approximately 14 days.

3

8. In my years of serving as an expert witness in prison and jail cases with confidential information, protective orders have been routinely used to ensure privacy and security, with resounding success. As an experienced academic researcher and expert witness working on federal cases I am well aware of the need to keep certain records confidential and am conversant with the protocols required for such confidentiality.

9. Finally, I concur with Dr. Eldon Vail's declaration dated January 31, 2020.

10. I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 31, 2020.

_____
Craig Haney, Ph.D, J.D.