# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**MICHAEL AMOS, et al.**                                                                      **PLAINTIFFS**

**V.**                                                **NO. 4:20-CV-7-DMB-JMV**

**TOMMY TAYLOR, et al.**                                                    **DEFENDANTS**

## ORDER

This order memorializes and clarifies rulings made during the February 3, 2020, hearing on the parties' motions to compel expedited discovery.

## I
## Procedural History

On January 14, 2020, twenty-nine individuals incarcerated at the Mississippi State Penitentiary in Parchman, Mississippi, filed a complaint in the United States District Court for the Northern District of Mississippi against Pelicia E. Hall, in her official capacity as the Commissioner of the Mississippi Department of Corrections, and Marshal Turner, in his official capacity as the Superintendent of the Mississippi State Penitentiary. Doc. #1. In their complaint, the plaintiffs alleged that the defendants' policies and practices caused years of neglect at Parchman, which placed them in imminent danger of serious physical injury, in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment, as incorporated by the Fourteenth Amendment.

Ten days later, the plaintiffs filed an emergency motion seeking a temporary restraining order and a preliminary injunction ("Injunction Motion"). Doc. #13. The motion asks "that this Court grant a temporary restraining order directing the holding of an evidentiary hearing at the Mississippi State Penitentiary and the appointment of a special master to administer appropriate relief to Plaintiffs, and, pending such notice and opportunity to be heard as the Court deems appropriate, a preliminary injunction granting the same." *Id*. at 2.

Pursuant to an expedited briefing schedule, the defendants responded in opposition to the Injunction Motion, Doc. #17, and the plaintiffs replied, Doc. #18. On January 28, 2020, the plaintiffs filed a First Amended Complaint.[1] Doc. #19. The First Amended Complaint contains the same substantive allegations of mistreatment as the original complaint; names an additional four plaintiffs; substitutes Tommy Taylor, in his official capacity as the Interim Commissioner of MDOC, in place of Hall; and asserts a proposed class action. The First Amended Complaint seeks injunctive and declaratory relief, plus attorney's fees and expenses.

On January 29, 2020, the Court convened a status conference regarding the plaintiffs' Injunction Motion. During the conference, the Court informed the parties that the record on the Injunction Motion was incomplete and insufficient. Accordingly, the Court advised the parties it intended to allow expedited limited discovery relevant to the Injunction Motion. The Court directed the parties to attempt to reach an agreement on the scope and timing of discovery and to provide an update by 4:00 p.m. the next day. At approximately 3:30 p.m. on January 30, the parties, by separate e-mails, informed the Court that they were unable to reach any agreement as to any discovery.

After the parties informed the Court that no agreement could be reached, the Court issued an order authorizing the plaintiffs to file a motion to compel expedited discovery. Doc. #31. The order, which set an expedited briefing schedule, also set an in-person hearing to resolve any outstanding discovery issues. *Id*. at 2. In compliance with this Court's order, the plaintiffs filed a motion to compel on February 1, 2020. Doc. #33. The next day, the defendants responded to the motion to compel, Doc. #35, and filed their own motion to compel, Doc. #37. The plaintiffs

---

[1] The same day of this filing, counsel for the plaintiffs advised the Clerk's office that the wrong document had been attached during the filing process. The Clerk advised the plaintiffs to re-file attaching the correct document. The plaintiffs then filed another First Amended Complaint. Doc. #22. To the extent Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading only once within 21 days after its service, the plaintiffs should determine whether a filing error counts as their one time to amend as of right.

filed a reply in support of their motion to compel, which includes a response to the defendants' motion. Doc. #39.

On February 3, 2020, the Court held a hearing on the parties' motions to compel. During the hearing, the Court orally ruled on some of the discovery issues, which rulings are described below. The Court then directed the parties to attempt to reach agreements about the details of the allowed discovery, including an inspection of Parchman, within the confines of the Court's rulings. Following the hearing, the parties informed the Court of certain outstanding issues. With certain exceptions noted below, the outstanding issues will be addressed by separate order upon consideration of the supplemental briefing this Court ordered on February 7, 2020. *See* Doc. #45.

## II
## The Plaintiffs' Motion to Compel

The plaintiffs' motion to compel seeks three categories of relief—an inspection of Parchman, "a more streamlined process for inmate interviews," and authorization for a "third-party medical team to offer inmates free medical examination and treatment for minor wounds." *See* Doc. #34. During the hearing, the parties informed the Court that they had reached an agreement regarding the plaintiffs' request for a modification to the interview process. Accordingly, the plaintiffs' motion is properly denied as moot in that regard.

### A. Applicable Standard

As for the plaintiffs' remaining requests, Federal Rule of Civil Procedure 26 authorizes a court to order discovery before the standard discovery period *See* Fed. R. Civ. P 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except … when authorized by … court order."). "[S]ome courts have found that expedited discovery is appropriate in limited circumstances and for limited rationales, such as when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1057 (D. Minn. 2019)

(quotation marks omitted). "The purpose of expedited discovery in the context of a temporary restraining order or preliminary injunction is for further development of the record before the preliminary injunction hearing, which better enables the court to judge the parties' interests and respective chances for success on the merits." *Id*. at 1057–58 (cleaned up).

When a party seeks expedited discovery for the purpose of an injunction hearing, that party must show good cause. *St. Louis Grp., Inc. v. Metals & Additives Corp., Inc.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011). When discovery is sought for this purpose, the requested discovery must be "reasonably tailored to the time constraints under which both parties must proceed or to the specific issues that will have to be determined at the preliminary injunction hearing." *Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728, 731 (S.D.N.Y. 1996). Additionally, the requested discovery must, of course, also be "discoverable" under the Federal Rules of Civil Procedure. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 277 (N.D. Cal. 2002) (expedited discovery warranted when it was "relevant and discoverable under the current complaint").

This Court previously concluded that the subjects and nature of the Injunction Motion justify expedited discovery in this case. Accordingly, resolution of the plaintiffs' motion to compel depends on two inquiries—whether the requested discovery is reasonably tailored to the injunctive relief sought and whether such discovery is otherwise discoverable.

### B. Inspection

Pursuant to Federal Rule of Civil Procedure 34(a)(2), a party may seek discovery "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." The request "(A) must describe with reasonable particularity each item or category of items to be inspected; (B) must specify a reasonable time,

4

place, and manner for the inspection and for performing the related acts; and (C) may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1). Where a satisfactory request has been made, the responding party must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

In the context of prison inspections, "the search for the truth must be balanced against the burdens and dangers created by the inspection." *United States v. Territory of the V.I.*, 280 F.R.D. 232, 236–37 (D.V.I. 2012). In this sense, a plaintiff must demonstrate a "heightened showing of relevance … to enter secure premises or to inspect areas or equipment within Defendants' control that are used for security purposes …." *Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*, No. 11-4001, 2013 WL 3555668, at *2 (N.D. Cal. July 12, 2013) (quotation marks omitted).

Here, the plaintiffs seek a fourteen-day period, beginning February 4, 2020, at 9:00 a.m. for experts and videographers to inspect Units 26, 28, 29, 30, 31, 32, and 42 of Parchman. Doc. #34 at 8. The proposed inspections would consist of two to three experts, plus counsel and "video documentation," operating in "three-four days" periods. *Id*. at 10. The proposed experts are (1) Eldon Vail – a correctional consultant; (2) Craig Haney – a psychologist and consultant; (3) Marc Stern – a professor of public health; (4) Madeline LaMarre – a nurse practitioner with experience in correctional health care; (5) Frank Edwards – a chemical engineer; (6) Debbie Graham – a health specialist and registered sanitarian; and (7) Terry Kupers – a psychiatrist. The expert teams operating would be Stern and LaMarre, Edwards and Graham, with Haney and Vail "floating."[2] The plaintiffs have submitted an affidavit from each expert stating that, based on their experiences with correctional facilities, the inspections would not present a security issue.

According to the plaintiffs, the teams would require:

---

[2] Kupers will not be involved in the inspections.

5

> Dr. Haney: the entire prisoner file of each prisoner that Dr. Haney interviews at cell front and/or confidentially.
>
> Dr. Stern and Ms. LaMarre: sick call request forms, emergency equipment and inspection logs, full medical records files for inmates that Dr. Stern and Ms. LaMarre interview, and the current health care systems policy and procedure manual(s).
>
> Mr. Edwards and Ms. Graham: appropriate documents regarding existing potable water test results, lead and asbestos testing and abatement reports/plans, mold test results and abatement plans, and sanitary sewage test results; and cleaning, sanitation, and disinfecting policies and procedures ("P&Ps"), food service P&Ps, laundry P&Ps, disposal and biohazard P&Ps, housekeeping and environmental P&Ps, and housekeeping and environmental P&Ps
>
> Mr. Edwards will [also] require the ability to conduct non-intrusive testing for contaminants in Unit 29, Unit 30, Unit 32, and Unit 42.
>
> Ms. Graham will [also] require the ability to test food and food storage temperatures.

Doc. #34 at 11–12.

In their response, the defendants "agree to … a reasonable, photographic and expert inspection of the units, buildings, and zones in which Plaintiffs are located." Doc. #36 at 7–8. The defendants also do not object to the requested documentation[3] but submit that such an inspection should be limited to one day, not include video recordings, not involve cell-front interviews, be limited to the areas in which the plaintiffs are housed, and be conducted only after specific plans are approved by the facility. Doc. #36 at 7–11. As grounds, the defendants have submitted an affidavit of Jeworski Mallett, Mississippi Department of Corrections' Acting Deputy Commissioner of Institutions, which states that the plaintiffs' inspection requests, as framed, would pose significant security concerns. Thus, while the parties agree as to the propriety of an inspection, they disagree on the following points: (1) the areas to be inspected; (2) the use of

---

[3] Subsequent to the hearing, the defendants have taken the position that the requested documentation will be provided as document discovery and not made available to the experts during the inspection. This objection, which should have been raised at the time the plaintiffs made the specific document request as a part of their inspection demand, is deemed waived. The requested documentation must be made available to the experts during the inspection, if not before.

6

video recordings; (3) inmate interviews; and (4) the length and the commencement of the inspection.

As to the scope of the inspection, to the extent the Injunction Motion is premised on the totality of the conditions of confinement, not just the housing, the request for the inspection of areas to which the named plaintiffs have access is undoubtedly relevant to disposition of the Injunction Motion. Furthermore, to the extent it is undisputed that prisoners at Parchman are often transferred within the institution, a limitation on current access strikes the Court as too narrow. Rather, the plaintiffs should be entitled to discover the conditions of those areas of Parchman to which the plaintiffs are reasonably likely to be or have been exposed.[4] Accordingly, with the recognition that past is prologue, in addition to those areas to which the plaintiffs currently have access, the plaintiffs will be entitled to inspect all areas in which they have been housed since February 3, 2019.[5]

As to the request to video, "[a] party may videotape his site inspection, if the benefit of the videotape to the inspecting party outweighs the burden on the inspected party." *Soler v. County of San Diego*, No. 14-cv-2470, 2016 WL 3460255, at *3 (S.D. Cal. June 24, 2016) (collecting cases). Thus, where there is evidence that video would create a disturbance in the prison, a request to videotape is properly denied. *Id.* at *3–4. Because the plaintiffs have offered no specific justification for video (as opposed to still photographs), and because the defendants have submitted evidence that the use of video recording equipment would create a disturbance, the plaintiffs may not use video equipment during the inspection..

Regarding inmate interviews, courts have cautioned against allowing informal interviews

---

[4] To the extent a current dispute exists over the right to inspect certain maintenance and housekeeping areas, the right to inspection necessarily depends on the extent to which the plaintiffs have now or have had access to such areas.

[5] In connection with this decision, the Court directed the defendants to submit documentation of the locations where the plaintiffs were housed in the past year. These documents, which were provided to the Court on February 4, 2020, appear to include private information which must be redacted should either party attempt to place the documents into the record. *See* Fed. R. Civ. P. 5.2.

7

during prison inspections because these unsworn "roving depositions" offer "small utility" to fact finding. *Territory of the V.I.*, 280 F.R.D. at 236–37. For this reason, and because the plaintiffs at this pre-certification stage may only vindicate their own rights,[6] the experts will not be allowed to interview prisoners during the inspection.[7]

Finally, as to the timeframe, the parties have represented to the Court that they have reached an agreement that the inspection may commence on February 11, 2020, but that they continue to disagree on the length of the inspection. Specifically, the plaintiffs seek an inspection of four days. The defendants ask for two days.

Insofar as the parties have reached an agreement on the commencement of the inspection, the Court need not resolve the issue. Regarding the proposed length of the inspection, the Court notes that in their reply, the plaintiffs stated their experts would only "need at least two 8-hour days to inspect the facilities …." Doc. #39 at 7. While the plaintiffs now seek additional time, it seems only fair to hold them to this initial representation to the Court. The inspection, therefore, will be limited to two eight-hour days at this time.[8]

### C. Medical Examinations

The plaintiffs propose:

to bring a third-party medical team to Parchman consisting of one or two medical doctors, between seven and nine nurse practitioners, and two emergency medical technicians, all of whom will have appropriate Mississippi licenses.

Inmates will be brought to the gymnasium in Unit 29 in groups up to 10 inmates, where they will check in and be identified. They will sign the appropriate consent forms accepting or declining examination and treatment, and those who consent will proceed to a station where basic vitals and a brief medical history are taken. Then, each inmate will proceed to one of 10 exam stations. The entire process

---

[6] Where no class has been certified, a plaintiff "does not have a right to access inmates in order to vindicate its own constitutional grievances." *Human Rights Def. Ctr. v. Bezotte*, No. 11-cv-13460, 2016 WL 1258992, at *6 (E.D. Mich. Mar. 31, 2016).

[7] As explained above, the parties reached a resolution regarding interviews of the named plaintiffs.

[8] As indicated in the Court's February 7 order, the Court retains discretion to modify this time period upon consideration of the parties' good faith efforts to complete the inspections. Doc. #44 at 1 n.1.

should take approximately 30 minutes per inmate, and we propose to provide the examinations and treatment, if any, to each inmate free of charge for the 700-1100 inmates we believe are, or have been since the filing of this action, housed in Unit 29 since the inception of this action.

If an inmate is found to have basic first aid needs, the medical team will treat the condition with over the counter medications or wound care present on site provided the inmate consents to treatment. Inmates found to have critical medical issues will be seen by the physician and, if necessary, a care recommendation will be made to the senior representative of MDOC available on site at the time.

The defendants argue this proposal would create all manner of security concerns and is beyond the scope of discovery. Also, at the hearing, the defendants requested that, to the extent the Court authorizes medical evaluations, the defendants be allowed to conduct evaluations of their own.

First, to the extent the plaintiffs seek an order authorizing the *medical treatment* of inmates, such request has no conceivable relevance to disposition of the Injunction Motion or the associated expedited discovery. Rather, the request itself is for mandatory injunctive relief (an order directing the defendants to allow medical treatment of all inmates at Parchman), which should be sought by a properly supported motion[9] seeking such relief. *See Waters v. Lincoln Gen. Ins. Co.*, No. 07-3183, 2008 WL 659471, at *2 (E.D. La. Mar. 5, 2008) ("By utilizing 'discovery' procedures to command specific performance of an obligation, ANPAC places the cart before the horse."). Accordingly, the requested medical treatment is inappropriate and denied.

As to the request for medical evaluations, the motion, in substance, seeks entry to Parchman for the purpose of conducting examinations. In this sense, the request is best considered as a Rule 34 demand, such that the Court must balance the security risks of the evaluations against the attendant security risks. *Territory of the V.I.*, 280 F.R.D. at 236–37.

To the extent the plaintiffs seek injunctive relief premised on the denial of required medical

---

[9] To the extent the plaintiffs' motion to compel may be interpreted as a motion for injunctive relief, it would be denied as inadequately supported.

care,[10] there is no question that their current health status is relevant to the resolution of the Injunction Motion. Similarly, insofar as the defendants have sought evaluations of their own, the Court presumes a medical evaluation of a plaintiff would present minimal security risk. Accordingly, the plaintiffs and the defendants are authorized to conduct medical evaluations of only those plaintiffs who seek injunctive relief premised on inadequate medical care.[11]

### III
### The Defendants' Motion to Compel

In their motion to compel, which is subject to the same standard explained above, the defendants seek expedited discovery of "a completely unredacted version of the Exhibit A [to the Injunction Motion]," which is a compilation of affirmations completed by inmates at Parchman. Doc. #38 at 3. The plaintiffs do not oppose removal of some redactions but argue that "the balance of interests favors continued redaction of inmates' personally identifying information, with disclosure [of the unredacted portions] under the terms of an attorneys' eyes-only restriction."[12] Doc. #39 at 13. The plaintiffs contend that protection of the personally identifiable information is necessary to avoid retaliation from prison officials.

First, insofar as the plaintiffs have agreed to remove all redactions unrelated to personally identifying information, the motion to compel is mooted to the extent it seeks such information. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 88 (S.D.N.Y. 2016) ("Where the party responding to the motion agrees to provide the discovery requested, a motion to compel becomes moot."). Thus, the Court need only resolve the defendants' request for the personally identifying information.

---

[10] *See* Doc. #14 at 3.

[11] Per agreement reached at the hearing, representatives from the plaintiffs and representatives from the defendants may be present at all evaluations.

[12] As explained above, because the request for a protective order was included in the plaintiffs' response to the defendants' motion, the Court directed that the request be re-filed by separate motion.

As explained above, entitlement to expedited discovery depends on a showing of good cause. *St. Louis Grp.*, 275 F.R.D. at 240. "In a good cause analysis, a court must examine the discovery request on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Id.* at 239 (quotation marks omitted). Reasonableness may be determined by considering the following factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006).

Here, there is a preliminary injunction motion pending. Furthermore, the request for discovery, which is limited to approximately 250 pages of documents, is very narrow. The purpose is to respond to the Injunction Motion. And, given the narrow request and the fact that all documents are in the possession of the plaintiffs, the burden would be minimal. Accordingly, while the request is made well in advance of the typical discovery process, the relevant factors weigh in favor of a finding of good cause. Therefore, to the extent the plaintiffs only resist disclosure of the personally identifiable information in the affirmations, the Court must decide whether such information is discoverable and is "reasonably tailored to the time constraints under which both parties must proceed or to the specific issues that will have to be determined at the preliminary injunction hearing." *Giuliani*, 918 F. Supp. at 731.

Federal Rule of Civil Procedure 26(b)(1) authorizes discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense …." "A party moving to compel discovery bears the initial burden of proving the relevance of the requested information." *In re Milo's Kitchen Dog Treats Consol. Cases*, 307 F.R.D. 177, 179 (W.D. Pa. 2015). If the information is relevant, the burden shifts to the party resisting discovery to show that the discovery

"is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *In re Urethane Antitrust Litig.*, 261 F.R.D 570, 573 (D. Kan. 2009).

In this case, the defendants, beyond conclusory assertions of necessity, have failed to articulate any relevancy as to personally identifying information of inmates who are not parties to this case. Even if the information carried some relevancy, the relevance would be outweighed by the legitimate concerns of retaliation raised by the plaintiffs. Accordingly, the personally identifiable information of non-parties in the affirmations is not discoverable.

However, the conditions of the plaintiffs' confinements, as stated in the affirmations, are undoubtedly relevant to disposition of both the claims generally and to the injunction motion. Additionally, while the plaintiffs have raised concerns regarding retaliation connected to the disclosure of personally identifying information, these concerns are not implicated by disclosure of the plaintiffs' personally identifying information, which is already known. Therefore, the Court concludes that the plaintiffs' personally identifying information in the affirmations is subject to expedited discovery.

## IV
## Requests for Protective Orders

In their respective responses to the motions to compel, the parties requested protective orders which would govern the disclosed information. *See* Docs #36, #39. The Local Rules of this Court provide that "[a] response to a motion may not include a counter-motion in the same document." L.U. Civ. R. 7(b)(3)(C). Accordingly, the Court instructed the parties during the hearing to confer and submit a joint motion for a protective order, along with a proposed order. Also during the hearing, the Court asked the defendants if there were site and building plans of Parchman's structures and, if so, to provide them. The defendants agreed to produce such plans but requested that they also be subject to a protective order, which request the Court advised may

be included in the parties' joint motion.

The parties have not yet filed the joint motion for a protective order. In the meanwhile, should disclosure of discovery precede the entry of the contemplated protective order, the parties are directed to act in good faith to avoid misuse of the discovery. Given this directive and the expedited nature of these proceedings, the absence of a protective order does not excuse the parties from completing expedited discovery relative to the Injunction Motion.

## V
## Conclusion

For the reasons above, the plaintiffs' motion to compel expedited discovery [33] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent it seeks an inspection of Parchman and medical evaluations of the plaintiffs, as set forth above. The motion is DENIED in all other respects. The defendants' motion to compel expedited discovery [37] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent it seeks disclosure of the plaintiffs' personally identifiable information in the affirmations. The motion is DENIED in all other respects.[13]

**SO ORDERED**, this 10th day of February, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[13] As mentioned above, the parties' post-hearing outstanding issues will be addressed by separate order.