IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**MICHAEL AMOS, et al.**                                              **PLAINTIFFS**

**V.**                                                       **NO. 4:20-CV-7-DMB-JMV**

**TOMMY TAYLOR, et al.**                                              **DEFENDANTS**

## ORDER

At February 3, 2020, hearing the Court authorized expedited discovery in the form of an on-site inspection at the Mississippi State Penitentiary in Parchman, Mississippi. Following the hearing, the parties informed the Court of nine outstanding issues related to the inspection. The Court directed briefing on six of these issues. On February 8, 2020, the parties submitted supplemental briefs and evidence on the six outstanding issues. Docs. #45, #46.

## I
## Governing Standard

As the Court recently explained, a party may seek discovery pursuant to Federal Rule of Civil Procedure 34(a) "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." The request "(A) must describe with reasonable particularity each item or category of items to be inspected; (B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts; and (C) may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1). Where a satisfactory request has been made, the responding party must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2).

In the context of prison inspections, "the search for truth must be balanced against the burdens and dangers created by the inspection." *United States v. Territory of the V.I.*, 280 F.R.D.

232, 236–37 (D.V.I. 2012). In this sense, a plaintiff must demonstrate a "heightened showing of relevance … to enter secure premises or to inspect areas or equipment within Defendants' control that are used for security purposes …." *Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*, No. 11-4001, 2013 WL 3555668, at *2 (N.D. Cal. July 12, 2013).

## II
## Areas of Inspection

First, the parties disagree as to the scope of the inspection. The plaintiffs seek access to every building in which the plaintiffs were housed over the past year. Doc. #45 at 2–4. The plaintiffs argue that this scope is necessary because "inspections that are limited to certain Zones are inadequate [because] they do not afford access for control booth and camera lines of sight which often cross zones." *Id*. at 3. The defendants seek to limit such access to the *zones* within the buildings where the plaintiffs were housed over the past year because "[a]n inmate who is housed in one zone of a building would not be authorized to enter the other zone of the same building unless the inmate was designated to be housed in that other zone." Doc. #46 at 2–4. The defendants further argue that increasing the scope of the inspection would raise additional security concerns and that, given the lack of access, an inspection of other zones would be of little to no relevance.

During the February 3, 2020, hearing, this Court held the plaintiffs were entitled to inspect those areas where the plaintiffs "have been in the past year prior." In a subsequent order, the Court clarified the proper scope to be those areas to which the plaintiffs had access. *See* Doc. #48 at 7–8. Accordingly, the plaintiffs will not be entitled to inspect those zones to which the plaintiffs have not had access in the last year.

## III
## Initial Walkthrough

The plaintiffs, in essence, seek to conduct two inspections—a "general walk-through" for

2

all the experts, and then a return trip "back to specific areas that need to be inspected in greater detail/and or where tests, measurements, and documentation needs to occur." Doc. #45 at 5–6. The defendants argue that this proposal needlessly doubles the security risks of the inspection. Doc. #46 at 4–5.

This Court agrees with the defendants. Per the limited expedited discovery ordered by this Court, the plaintiffs are entitled to one, not two, inspections of the Parchman premises at this stage. Furthermore, while the plaintiffs' experts represent that they require the initial walk-through to "focus" their inquiries "on the most significant problem areas," the Court is confident that the experts, who each hold what appears to be sterling credentials in their respective fields and have conducted thousands of inspections, have the capacity to identify significant problem areas without the aid of an initial-walk through.

## IV
## **Presence of Photographers**

The plaintiffs seek to bring with their experts two photographers who would "carry their respective equipment in one bag each." Doc. #45 at 7. The plaintiffs argue that the photographers are necessary because their experts will be focused on conducting the necessary tests and will not be able to take the necessary photographs. They further submit "that taking quality photographs in a setting such as Parchman, where there is limited natural light and many confined spaces, will be challenging for experienced photographers but likely impossible for the Experts, who have no expertise photographing in low light, shadowy conditions." *Id.*

The defendants argue there is little need for "staged" photography and that the presence of professional photographers with "clearly conspicuous, professional equipment" raises similar concerns to the plaintiffs' request for a videographer, which the Court previously rejected. Doc. #46 at 6. The defendants finally argue that the presence of additional people would create additional security concerns. *Id.*

As an initial matter, the defendants have offered no basis for their assertion that the photographs to be taken by the photographers will be staged in any way. Furthermore, contrary to the defendants' contention, the Court believes photographs of the living conditions at Parchman to be indisputably relevant. The Court shares the defendants' concern about "conspicuous" photography equipment but does not believe that a single bag of equipment—which apparently would consist of batteries, lenses, flashes, and one tripod[1]—is of such a conspicuous character that it would create the same security concerns as a video recorder. Finally, while the defendants argue generally that more people necessarily means more security concerns, they fail to specifically articulate how the presence of two trained photographers would impact security in such a way as to outweigh the clear need for photography in this case. However, the plaintiffs have not explained why it would take two photographers to take desired photographs. Accordingly, to the extent the addition of one photographer does not exceed the number of persons the parties agreed would be allowed during the inspection, the plaintiffs may bring one photographer, provided the equipment does not exceed one bag.

V
**Digital Medical Records During Medical Evaluations**

The plaintiffs ask for digital "real time" access to their medical records during the Court-authorized medical evaluations because the use of paper records would be inefficient.[2] Doc. #45 at 8–9. The defendants represent that they are in the process of providing updated medical records for all named plaintiffs but argue that "any relevance of Plaintiffs' having real time electronic access is far outweighed by the confidential and privacy concerns raised by providing the same. Doc. #46 at 8. Specifically, the defendants argue that providing the requested access would

---

[1] *See* Doc. #46-1.

[2] As explained in this Court's previous order, the plaintiffs are entitled to conduct medical evaluations of the plaintiffs who seek injunctive relief related to medical care. This is all of them.

effectively grant the plaintiffs access to the health records of *all* inmates. *Id*.

Given the privacy concerns raised by the defendants and the fact that the plaintiffs will indisputably have all relevant medical records, the Court will not grant the plaintiffs the requested access. However, to the extent the use of such records implicates the pace of evaluations in such a way as to prevent the timely completion of medical evaluations, the plaintiffs may seek an extension of time for medical evaluations.

## VI
## Location of Medical Evaluations

The plaintiffs seek that the medical evaluations "be performed in a conducive medical environment such as a unit medical clinic or Unit 42, which is the hospital." Doc. #45 at 9. The defendants propose that the evaluations for the Unit 29 inmates be conducted in the medical clinic in Unit 29, that the evaluations for the inmates in Unit 30 be conducted in the medical clinic in Unit 30, and that the evaluations for the inmates in Units 25 and Units 26 (which do not have individual medical units) be conducted in Unit 42. Doc. #46 at 8–9. Insofar as the defendants' proposal seems to correspond with the plaintiffs' request, the Court accepts the defendants' plan.

## VII
## Review of Testing and Policies and Procedures

Finally, the plaintiffs ask that they be permitted during the inspection to review the "most current water and sanitary sewage test results" which Parchman is required to maintain onsite.[3] Doc. #45 at 11. The plaintiffs also seek during the inspection to review "relevant policies and procedures related to the common areas being inspected: cleaning, sanitation and disinfecting; food service; laundry, housekeeping, and maintenance; disposal and biohazard; and environmental." *Id.* at 11–12. (footnote omitted). According to the plaintiffs, the testing requests are necessary "(a) to ensure that Parchman's water and sewage systems are up to

---

[3] The defendants have not disputed that Parchman is required to keep such results on-site.

5

standards; and (b) to inform the Experts regarding areas that need additional attention during the inspection based on the most recent test results." *Id.* at 11. The policies and procedures are allegedly necessary "(a) to ensure Parchman's policies and procedures meet applicable standards; and (b) to ensure that the policies and procedures are being properly implemented, as evidenced by conditions observed during the inspection." *Id.* at 12.

The defendants argue that the request was not made in the original motion to compel and is overbroad and irrelevant. Doc. #46 at 10–11. The defendants also argue they do not have sufficient time to gather the relevant documents. *Id.*

Contrary to the defendants' argument, the plaintiffs expressly requested access to the requested documents in their initial motion to compel, which stated that during the inspection:

> Lead Plaintiffs' exerts [sic] require … access to the following readily accessible documentation …
>
> Mr. Edwards and Ms. Graham: appropriate documents regarding existing potable water test results, lead and asbestos testing and abatement reports/plans, mold test results and abatement plans, and sanitary sewage test results; and cleaning, sanitation, and disinfecting policies and procedures ("P&Ps"), food service P&Ps, laundry P&Ps, disposal and biohazard P&Ps, housekeeping and environmental P&Ps, and housekeeping and environmental P&Ps.

Doc. #34 at 12.

The defendants had the opportunity to object to these specific requests but did not do so in the days since the plaintiffs filed their motion to compel on February 1, 2020. However, the Court agrees that the request, as framed for all of Parchman, is overbroad. Rather, the plaintiffs are entitled to those tests, policies, and procedures, related to the areas at Parchman for which the plaintiffs have (or have had over the past year) access. To the extent such documents are encompassed by the plaintiffs' February 1, 2020, request for on-site inspection, they are entitled to review the documents during the inspection.[4]

---

[4] The plaintiffs should be mindful that such review must take place during the inspection time period allowed by the

# VIII
## Conclusion

The on-site inspection shall occur as scheduled on February 11, 2020, as directed above and in accordance with the Court's prior order issued this day.

**SO ORDERED**, this 6th day of February, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

Court.