**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**MICHAEL AMOS, et al.**                                                **PLAINTIFFS**

**V.**                                      **NO. 4:20-CV-7-DMB-JMV**

**TOMMY TAYLOR, et al.**                                      **DEFENDANTS**

**ORDER**

Before the Court is the plaintiffs' motion for expedited discovery regarding implementation of COVID-19 measures at the Mississippi State Penitentiary. Doc. #128.

**I**
**Procedural History**

On January 28, 2020, thirty-three inmates at the Mississippi State Penitentiary at Parchman filed a "First Amended Class-Action Complaint and Demand for Jury Trial" against Tommy Taylor, in his official capacity as the Interim Commissioner of the Mississippi Department of Corrections, and Marshal Turner, in his official capacity as the Superintendent of Parchman. Doc. #22. In their complaint, the plaintiffs allege that the defendants' policies and practices caused years of neglect at Parchman, which placed them in imminent danger of serious physical injury, in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment, as incorporated by the Fourteenth Amendment. The pleading, which includes a proposed class action, seeks monetary and injunctive relief.

On March 16, 2020, the plaintiffs filed an emergency motion for a temporary restraining order and mandatory preliminary injunction. Doc. #59. The motion sought an "order directing mandatory and affirmative action to safeguard Plaintiffs at Parchman from SARS-CoV-2, also known as, COVID-19." *Id*. at 1. Three days after the completion of expedited briefing, the Centers for Disease Control and Prevention issued a document titled, "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities."

Based upon this guidance, the Court directed the parties to supplement their briefing. Doc. #70. The parties completed their supplemental briefing on April 15, 2020. *See* Docs. #74, #75.

On April 24, 2020, this Court denied the plaintiffs' request for preliminary injunctive relief, finding:

> [T]he defendants have undoubtedly taken steps to address the risk of COVID-19 in Parchman. Such undisputed steps include the creation and updating of the [facility's pandemic] Plan, posting of signs, promulgation of quarantine and screening policies for both inmates and visitors, suspension of in-person visitation except for attorneys, implementing cleaning procedures in the housing units, the waiving of co-pays for inmates, limitations on transfers, and the provision of extra soap to inmates.

Doc. #79 at 18. In reaching these factual conclusions, the Court credited the affidavits of officials from MDOC and Centurion (MDOC's third-party healthcare provider). *Id*. at 2–13.

On August 11, 2020, the plaintiffs filed a motion for "expedited discovery focused on Defendants' compliance [with] the representations made to this Court [regarding COVID-19 precautions at the Mississippi State Penitentiary] and with public health guidelines and implementation of measures at Parchman to reduce spread and protect against COVID-19." Doc. #128 at 1. Specifically, the motion asks that "the Court enter an Order: (1) that service of Plaintiffs' Interrogatories and RFPs on Defendants' be deemed effective the date this Motion is granted; and (2) directing Defendants to respond to interrogatories and produce documents responsive to Plaintiffs' RFPs on an expedited basis – within five (5) to seven (7) days." *Id*. at 3. The motion is designated as "urgent" and "necessitous" pursuant to Local Rule 7(b)(8). *Id.* Based on the urgent and necessitous designation, this Court set an expedited briefing schedule directing the defendants to respond to the motion for discovery on or before August 17, 2020. Doc. #130. The motion is fully briefed. *See* Docs. #136, #137.

## II
## Analysis

The plaintiffs seek expedited discovery "to allow the parties and Court to have a full,

2

accurate understanding of the core issues central to determine the propriety of injunctive relief" regarding Parchman's COVID response. Doc. #128 at 2. The defendants respond that (1) the motion for expedited discovery is in effect an improper motion for reconsideration; (2) the requested discovery is an improper request for injunctive relief; (3) discovery regarding their COVID response is irrelevant to the claims in this case; (4) expedited discovery is improper; and (5) even if the plaintiffs were entitled to some expedited discovery, their proposed discovery requests are improper. Doc. #136 at 6–29.

### A. The discovery motion is not a motion for reconsideration.

The defendants first argue that because the motion for expedited discovery is premised on the same general allegation as the plaintiffs' March 16 injunction motion—that Parchman has failed to implement adequate safeguards to protect inmates from COVID-19—and because the "ultimate requested relief is nothing more than a repackaging of the previously denied motion for injunctive relief," the discovery motion is, in effect, a motion for reconsideration. *Id*. at 6–7. Accordingly, the defendants argue that the motion must be evaluated under the higher standard applied to motions for reconsideration. *Id*. at 7–9. This argument fails for at least two reasons.

First, contrary to the defendants' assertions, the motion for discovery seeks relief wholly distinct from the March 16 motion. As this Court previously observed:

> As supplemented, the plaintiffs' [March 16] motion seeks a court order requiring that the defendants: (1) implement the CDC Guidance; (2) implement the Centurion Plan; (3) enact a variety of screening, visitation, and cleaning protocols; (4) make regular reports to the Court and the plaintiffs; and (5) provide access to a Mississippi Department of Health official who will monitor compliance with the Court's order, and report to the Court and the plaintiffs.

Doc. #79 at 14–15 (footnotes omitted). While the defendants contend that the discovery motion seeks "regular reports to the Court and the plaintiffs; and access to a Mississippi Department of Health official who will monitor compliance with the Court's order and report to the Court and the plaintiffs," this is simply not the case. Doc. #136 at 7. The motion for expedited discovery

3

merely seeks leave to serve on the defendants certain interrogatories and requests for production and that the period to respond to such requests be expedited. Doc. #128 at 3.

Second, even if a motion seeks relief which was previously denied, it is not a motion for reconsideration if it is based on facts which were not in existence at the time the earlier motion was filed. *See In re Daughtrey*, 896 F.3d 1255, 1270 (11th Cir. 2018) ("Although styled a 'Motion for Reconsideration,' the motion was an entirely new Motion … for it was based on facts that had not been disclosed either before or after the September 22 Motion … was filed."). Where, as here, a party seeks injunctive relief based on new factual allegations, the subsequent motion is not a motion for reconsideration. *Tarpley v. Hogan*, No. 15-735, 2016 WL 4888914, at *8 (D. Md. Sept. 15, 2016) ("Though Tarpley styled his Motion as a Motion for Reconsideration, the Court will treat it [as] a new Motion for Injunctive Relief because the factual allegations are distinct from those in the previous Motion for Preliminary Injunction."); *Mack v. Turner*, No. 5:15-cv-3589, 2016 WL 1733474, at *1 (S.D.W.V. Apr. 29, 2016) ("Though the Plaintiff styled his first motion as a motion for reconsideration, the Court will treat the motions collectively as a new motion for injunctive relief, as the factual allegations are distinct from those in the previous motion for injunctive relief."). The motion for discovery, therefore, is not properly considered a motion for reconsideration.

### B. The discovery motion is not a motion for injunctive relief.

The defendants next argue that the plaintiffs' proposed discovery is an attempt to "retroactively" impose a reporting requirement. Doc. #136 at 12–13 (emphasis omitted). Thus, the defendants argue, the motion must meet the four-part test associated with an injunction motion. *Id*. at 12–15. Unsurprisingly, the defendants cite no authority for this novel proposition.

While it is true that the plaintiffs in the past have sought injunctive relief under the guise

4

of discovery,[1] the plaintiffs' request here is purely for answers to interrogatories and responses to requests for production. This is a prototypical discovery request. And while a discovery order has "the form of an injunction" in that it requires a party to do or not do something, such an order is "deemed not to be [an] injunction[.]" *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 32 F.3d 1175, 1177 (7th Cir. 1994) (considering whether discovery order is appealable as injunction).

### C. COVID-19 discovery is relevant.

It is axiomatic that expedited discovery, like all discovery, must be discoverable under the Federal Rules of Civil Procedure—that is, it must be "relevant and discoverable under the current complaint." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 277 (N.D. Cal. 2002). In this sense, expedited discovery sought for the purpose of a preliminary injunction is only discoverable if the request for injunctive relief is proper under the operative complaint. *See id*. To this end, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (collecting cases). "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id*.; *see Bucklew v. St. Clair*, No. 3:18-cv-2117, 2019 WL 2251109, at *2 (N.D. Tex. May 15, 2019) ("Although the Fifth Circuit Court of Appeals has not specifically addressed this issue, district courts within this circuit have found that a request for preliminary injunction must also be based on allegations related to the claims in the complaint.") (collecting cases).

The defendants contend that this action, which predated the COVID-19 pandemic, cannot

---

[1] *See Amos v. Taylor*, 4:20-cv-7, 2020 WL 618824, at *6 (N.D. Miss. Feb. 10, 2020) ("[T]o the extent the plaintiffs seek an order authorizing the *medical treatment* of inmates, such request has no conceivable relevance to disposition of the Injunction Motion or the associated expedited discovery. Rather, the request itself is for mandatory injunctive relief (an order directing the defendants to allow medical treatment of all inmates at Parchman), which should be sought by a properly supported motion seeking such relief.") (footnote omitted).

5

encompass claims for injunctive relief related to COVID-19. Doc. #136 at 25. The plaintiffs respond that the necessity for COVID-19 protection is grounded in the plaintiffs' claims based on inadequate healthcare. Doc.# 137 at 9–10.

Two district courts have considered the issue of whether plaintiffs in a conditions-of-confinement action filed before COVID-19 may seek injunctive relief related to the pandemic. In *Baxley v. Jividen*, a district judge in the Southern District of West Virginia concluded, without analysis, that "statewide claims related to how inmates generally receive medical … treatment upon admission" were "sufficiently broad to encompass claims for medical treatment for COVID-19." No. 3:18-cv-1526, 2020 WL 1802935, at *3 (S.D.W.V. Apr. 8, 2020).

In *Sabata v. Nebraska Department of Correctional Services*, a district judge in the District of Nebraska held that claims related to COVID-19 treatment and protection could not fall within the ambit of pre-existing medical claims because "no party contemplated that this action would encompass a claim regarding a virus that did not exist." No. 4:17-cv-3107, __ F. Supp. 3d __, 2020 WL 2201873, at *3 (D. Neb. May 1, 2020). In reaching this conclusion, the *Sabata* court relied on *Coleman v. Newsom*, a case in which a three-judge panel held that an emergency motion for release brought under Federal Rule of Civil Procedure 60(b)(5) premised on a 2009 prison reduction order was procedurally improper because:

> the Supreme Court contemplated that we could adjust our remedial order to ensure that it remained appropriately tailored to its original goal: reducing the prison population to a level sufficient, but no lower than necessary, to allow Defendants to deliver constitutionally adequate medical and mental health care services. We do not believe that the Court envisaged us "modifying" our judgment to require an additional reduction in the prison population to respond to a unique threat posed by a specific virus that could not have been foreseen only a few months ago, much less at the time of the 2009 population cap order. Our discretion to modify our prior orders is not boundless.

No. 01-cv-01351, __ F. Supp. 3d__, 2020 WL 1675775, at *6 (E.D. Cal. Apr. 4, 2020) (citation omitted).

6

In considering these respective positions, the Court finds *Coleman*, which compared the request for relief to *an earlier order* (rather than a complaint), to be largely unpersuasive to the question of whether a request for COVID-19 relief is encompassed in an earlier complaint. To the extent *Sabata* relied on *Coleman's* analysis, the Court finds it unpersuasive too. Rather, this Court, like the *Baxley* court, finds a sufficient link between a claim for injunctive relief premised on COVID-19 and claims asserted in a complaint premised on inadequate health care.

The plaintiffs' amended complaint here asserts an Eighth Amendment claim based on an allegation that the defendants "have a policy and practice of failing to mitigate the risk of infectious and communicable diseases." Doc. #22 at 24. The amended complaint seeks injunctive relief to "eliminate the substantial risks of serious harm" flowing from this practice. *Id*. at 27–28. Any injury claimed in a motion for injunctive relief premised on failure to protect from COVID-19 would necessarily flow from the alleged conduct of failing to mitigate the spread of such disease. It follows that granting injunctive relief would involve granting relief of the same character which could be granted on the underlying claim. Under these circumstances, the Court concludes that a motion for preliminary injunction based on COVID-19 is encompassed by the allegations in the complaint. The defendants' argument to the contrary is without merit.

### D. Expedited discovery is proper.

Federal Rule of Civil Procedure 26 authorizes a court to order discovery before the standard discovery period is set. *See* Fed. R. Civ. P 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except … when authorized by … court order."). "[S]ome courts have found that expedited discovery is appropriate in limited circumstances and for limited rationales, such as when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1057 (D. Minn. 2019) (internal quotation marks omitted). "The

7

purpose of expedited discovery in the context of a temporary restraining order or preliminary injunction is for further development of the record before the preliminary injunction hearing, which better enables the court to judge the parties' interests and respective chances for success on the merits." *Id*. at 1057–58 (cleaned up).

When a party seeks expedited discovery for the purpose of an injunction hearing, that party must show good cause. *St. Louis Grp., Inc. v. Metals & Additives Corp., Inc.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011). "Good cause may be found where the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id*. at 239 (internal quotation marks omitted).

> "Factors commonly considered in determining the reasonableness of an expedited discovery request include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made."

*Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 455–56 (D.S.D. 2014); *see Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (applying same five-factor test).

### 1. *Factor 1: pendency of motion for preliminary injunction*

The plaintiffs argue that the first factor weighs in favor of a finding of good cause because they "anticipate the imminent need to renew their request"[2] and "because time is not only of the essence but could mean the difference between life or death for inmates at Parchman." Doc. #129 at 12–13. However, the mere anticipation of a preliminary injunction motion does not satisfy the first factor. *See Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531–32 (E.D.N.C. 2005) ("[P]laintiff's motion for expedited discovery is not reasonably timed, where, as here, plaintiff has not yet filed a temporary restraining order or a motion for preliminary injunction, setting out in detail the areas in which discovery is necessary in advance of a determination of

---

[2] The plaintiffs do not argue that the discovery is justified by the pending emergency motion for injunctive relief related to the general conditions at Parchman.

8

preliminary injunctive relief."). Furthermore, the purported need for the injunctive relief of course has no bearing on whether a motion for preliminary injunction is pending. Accordingly, the Court concludes that the first factor weighs against a finding of good cause.[3] *See CGB Diversified Servs., Inc. v. Adams*, No. 20-2061, 2020 WL 1271772, at *1 (D. Kan. Mar. 17, 2020) ("The Court notes that there is no motion for a preliminary injunction pending in the present case. Rather Plaintiff merely intends to file such a motion after it conducts the requested discovery. The lack of a current motion weighs heavily against Plaintiff's request."); *ALARIS Grp., Inc. v. Disability Mgmt. Network, Ltd.*, No. 12-446, 2012 WL 13029504, at *3 (D. Minn. May 30, 2012) ("[C]ourts have … found that expedited discovery is not appropriate where there was in fact no pending motion for preliminary injunction.") (collecting cases).

### 2. Factor 2: breadth of discovery requests

When expedited discovery is sought for the purpose of pursuing a motion for preliminary injunction, the requested discovery must be "reasonably tailored to the time constraints under which both parties must proceed or to the specific issues that will have to be determined at the preliminary injunction hearing." *Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728, 731 (S.D.N.Y. 1996).

The plaintiffs' proposed discovery seeks responses to the following interrogatories:

**INTERROGATORY NO. 1**: Consistent with information provided by Departments of Correction throughout the country, including the Louisiana Department of Public Safety and Corrections, please separately provide the following COVID-19 statistics for both the inmate and employee populations of each of the twenty-three (23) facilities for which MDOC typically reports COVID-19 information: (1) total number tested; (2) total number of positive tests; (3) total number of negative tests; (4) total number of pending tests; (5) total number of retests processed; (6) total number of recovered cases; and, (7) total number of

---

[3] In their reply, the plaintiffs cite *OMG Fidelity, Inc. v. Sirius Technologies, Inc.*, 239 F.R.D. 300, 304–05 (N.D.N.Y. 2006), for the proposition that they will be prejudiced if discovery is not allowed to proceed. Doc. #137 at 8–9. However, *OMG Fidelity* did not purport to apply the multi-factor good cause standard. It appeared to conflate the standard for staying discovery with the request for expedited discovery. 239 F.R.D. at 304–05. In applying the stay standard, the district court observed that denial of expedited discovery for a contemplated preliminary injunction motion would prejudice the plaintiff. *Id.* at 305. Because the district court was not applying the relevant factors, the Court finds the opinion to be of little value.

9

COVID-19 deaths.

**INTERROGATORY NO. 2:** Consistent with information and statistics provided by Departments of Correction throughout the country, including the Louisiana Department of Public Safety and Corrections, please separately provide the following COVID-19 statistics and information for both the employee and inmate populations by Unit, Building, and Zone at Parchman: (1) total number tested; (2) total number of positive tests; (3) current number of symptomatic positive cases; (4) current number of asymptomatic positive cases; (5) total number of negative tests; (6) total number of pending tests; (7) total number of retests processed; (8) total number of recovered cases; and, (9) total number of COVID-19 deaths.

**INTERROGATORY NO. 3:** For all inmate and employee statistics requested in Interrogatory No. 2, please identify the individual Persons counted in the statistics along with the reason/basis for their testing, the date(s) on which their test(s) were conducted and on which results were received. For the employee population, please identify the Persons counted in the statistics who have self-reported this information along with the reason/basis for their testing, the date(s) on which their tests were conducted and on which results were received. If the employee did not self-report, you may identify said employee by a unique identifier consistent throughout these responses.

**INTERROGATORY NO. 4:** Identify and provide information regarding the individuals who were determined to be Close Contacts of any and all Parchman Residents and employees who have tested positive for COVID-19. Please include in the information provided: (i) the identity of the Covid-19 positive case with whom they were a Close Contact; (ii) the steps taken to identify Close Contacts of the positive case; (iii) the location, time, and manner under which the contact took place; (iv) the Person(s) who undertook the contact tracing and/or Close Contact investigation and the date(s) on which it occurred; and, (v) whether the local or state health department was notified and/or involved in investigating/contact tracing.

**INTERROGATORY NO. 5:** Please identify each instance, since March 11, 2020, in which an individual, cohort, or any other group of Persons has been subject to Quarantine at Parchman. With respect to each instance, please include the following information: (i) whether it is an individual, cohort, or other group subject to the Quarantine; (ii) the number and identity of the Parchman Residents and employees involved or with access, including any floorwalkers or work crews; (iii) the location (Unit/Building/Zone/Cell/Bed) where it took place; (iv) the beginning and ending date, if any, of the Quarantine; (v) the identity of the Person(s) who made the decision to Quarantine; (vi) the circumstances and reasons the Quarantine was instituted; and, (vii) the MDOC employee(s) and/or healthcare professional(s) responsible for monitoring the health and symptoms of those subject to the Quarantine.

**INTERROGATORY NO. 6:** Please identify each instance, since March 11, 2020, in which a Person was placed under Medical Isolation at Parchman. With respect

to each instance, please include the following information: (i) the identity of the Parchman Resident(s) and employee(s) involved or with access, including any floor walkers or work crews; (ii) the location (Unit/Building/Zone/Cell/Bed) where the Medical Isolation took place; (iii) the beginning and ending date, if any, of the Medical Isolation; (iv) the identity of the Person(s) who made the decision to begin Medical Isolation; (v) the circumstances and reasons the Medical Isolation was instituted; and, (vi) the MDOC employee(s) and/or healthcare professional(s) responsible for monitoring the health and symptoms of the person in Medical Isolation.

**INTERROGATORY NO. 7:** Please state the criteria used to determine when a COVID-19 test should be administered to a Parchman Resident and any guidance, instruction, or suggestions provided by MDOC (or any other government agency, official, or representative) to Parchman on the circumstances under which a COVID-19 test should be administered. Please include in your response (a) the role of MSP custody staff in assessing the need for testing, (b) the supply of available tests in MSP, and (c) the use of outside medical facilities and the Mississippi Department of Health for testing,

**INTERROGATORY NO. 8:** Pursuant to MDOC's announcement on April 27, 2020, MDOC suspended "inter-facility transfers, except in emergency cases," while intra-facility transfers were never suspended. Please identify: (a) the number of inter-facility transfers (by date, departure, and arrival facility) that have occurred since April 27, 2020; (b) for those inter-facility transfers that occurred between April 27, 2020 and May 29, 2020, please identify the "emergent reason" for said transfer; (c) the number of intra-facility transfers that have occurred at Parchman (by date, departure Unit/Building/Zone, and arrival Unit/Building/Zone) since the diagnosis of the first COVID-19 case at the facility.

Doc. #128-1 at 4–7. The proposed discovery also includes the following requests for production:

**REQUEST NO. 1:** Produce any and all Documents, ESI, data, or other materials on which you relied in answering the foregoing Interrogatories including, but not limited to: test results, Close Contact tracing investigation records, MDOC Mortality/Morbidity and Death of Offender report forms, employee work schedules, logs, minutes, reports, inmate records, updates from daily/weekly/monthly calls relating to COVID-19, reports to state and federal agencies, screening forms, and transfer documentation.

**REQUEST NO. 2:** Produce all Sick Call requests submitted on or after March 11, 2020 by Parchman Residents reporting one or more COVID-19 Symptoms or a belief of having contracted COVID-19. Please include the documents reflecting the corresponding response/result, if any, of those Sick Call requests.

**REQUEST NO. 3:** Produce the policies, procedures, and protocols instituted to address the evaluation, care, custody, medical monitoring, treatment, and supervision of Parchman Residents who: (a) have tested positive for COVID-19; (b) are awaiting test results for COVID-19; (c) have underlying medical conditions

11

that increase the risk of severe illness from COVID-19; and/or, (d) report COVID-19 Symptoms.

**REQUEST NO. 4:** All Documents and ESI in your possession, custody, or control relating to Centurion of Mississippi, LLC's ("Centurion") Pandemic Preparedness and Emergency Response Plan (the "Centurion Plan"), including, but not limited to, those required, maintained, created, and/or updated per the terms of the Centurion Plan and all records required to be maintained in this regard …

**REQUEST NO. 5:** Produce all iterations of the rules, regulations, methods, policies, protocols, and procedures for (a) when staff may report to work at Parchman after they report symptoms of COVID-19 or test positive for COVID-19, and (b) notifying staff or visitors who were in contact with employees and Parchman Residents who exhibit symptoms, are determined be a Suspected COVID-19 case, become subject to Quarantine, and/or test positive.

**REQUEST NO. 6:** Upon information and belief, on or about April 8, 2020, Parchman Resident Earl Dycus was transported to Unit 42, the Parchman Hospital, due to COVID-19 Symptoms. Within two days of arriving at Unit 42, Dycus was transported to a local hospital where he died on April 11, 2020, having ultimately been diagnosed with COVID-19. Please produce all documentation reflecting the members of Dycus' work crew; the date(s) and locations (Unit/Building/Zone) where he worked in the fourteen (14) days prior to exhibiting COVID-19 Symptoms; the work performed; and, the Close Contact tracing investigation related to his diagnosis and death.

**REQUEST NO. 7:** Upon information and belief, a COVID-19 outbreak is currently on-going in Unit 31, the medically vulnerable unit of Parchman, where Defendants have allegedly housed Unit 31 inmates with confirmed negative COVID-19 tests in Zones A and B, and those with confirmed positive tests in Zones C and D. On or about July 27, 2020, Parchman Resident Jermaine Moore was housed in Zone C of Unit 31, waiting on the results of a pending COVID-19 test. That same day, Moore (along with other similarly situated inmates) was inexplicably moved from Unit 31 Zone C to Unit 31 Zone A, where medically vulnerable inmates who tested negative for COVID-19 were being housed. On or about the following day, July 28, 2020, Moore's and other inmates' tests returned positive and they were moved back to Zone C after having already exposed other Parchman Residents housed in Unit 31, Zone A (the "Moore Incident"). Please produce all documentation reflecting: (i) the transfer of Moore and any other Parchman Resident to/from/within Unit 31 since July 1, 2020; (ii) the investigation and Close Contact tracing that was performed as a result of this Moore Incident; (iii) the [sic] Person(s) who made the decision to transfer Moore; and, (iv) the actions taken by Defendant as a result of the Moore Incident.

**REQUEST NO. 8:** Upon information and belief, at least three Parchman Residents housed in Unit 29/A, the "quarantine unit", tested positive for COVID-19. Please produce all documentation relating to this matter including, but not limited, those Documents regarding: (i) the investigation and Close Contact tracing performed;

12

(ii) the timing and transfer, if any, of the positive inmates from Unit 29/A; (iii) the treatment, monitoring, care, supervision, and custody of Parchman Residents housed in Unit 29/A; and, (iv) any other actions taken by Defendants as a result of this incident.

*Id*. at 7–10.

The defendants argue that this requested discovery "is not limited to the named inmates at issue" and "encompass[es] a world of non-parties, spanning *each* of the twenty-three MDOC facilities and including both employees and inmates." Doc. #136 at 24. The plaintiffs contend that the discovery relates to the claims and "is both reasonable and proportional to the needs of the case, especially given that all of the documents sought are in Defendants' possession or under their control and should be readily accessible." Doc. #137 at 9.

Here, the plaintiffs intend to file a preliminary injunction motion based on the defendants' alleged failure to implement the procedures they represented to the Court were being put in place and the defendants' failure to respond to the changing circumstances of COVID-19. *See* Doc. #129 at 1–2. When framed in this fashion, discovery related to the policies of screening, testing, and quarantining of Parchman inmates and staff, as well as information related to the actual implementation of such policies, would undoubtedly be reasonable. However, though the proposed discovery requests information related to such facts, some requests go far beyond the proper scope. For example, as pointed out by the defendants, the plaintiffs seek information regarding COVID-19 testing and transfers from *all* MDOC facilities, not just Parchman. These requests, which have little to no relevance to the proposed motion, are improperly broad. For the same reason, Request for Production No. 1, which requires production of all documents used in responding to the interrogatories, is also overbroad.

In sum, some of the plaintiffs' proposed discovery is reasonable in scope while some is not. Under such circumstances, a court may weigh the second factor in favor of good cause and resolve the breadth concerns by allowing the opposing party "to raise objections and requiring an

expedited process for resolution of [those] objections." *CGB Diversified Servs., Inc. v. Morrison*, No. 20-cv-3043, 2020 WL 4547885, at *4 (C.D. Ill. Apr. 2, 2020); *see Miner, LTD. v. Anguiano*, No. 19-cv-00082, 2019 WL 9633302, at *2 (W.D. Tex. Mar. 20, 2019) ("To protect the parties from potentially unreasonable requests, the court will permit the parties to narrowly and specifically object to the scope and relevance of the information requested by the opposing party."). The Court will do so here. *See First Option Mortg., LLC v. Tabbert*, No. 2:12-cv-600, 2012 WL 1669430, at *4 (D. Nev. May 11, 2012) ("As the court will limit the scope of the discovery requests, the second factor weighs in favor of permitting expedited discovery.").

### 3. Factor 3: purpose of discovery

The plaintiffs contend that "[i]n order to more fully develop the factual record and renew their request for injunctive relief, Plaintiffs require verifiable information regarding Defendants' actual (not merely promised) efforts to prevent and respond to the COVID-19 outbreak at Parchman and the current state of those efforts." Doc. #129 at 15. The defendants respond that the plaintiffs are improperly seeking merits evidence and that even if they were not, any renewed motion would be futile. Doc. #136 at 27.

In considering the purpose of the motion, the Court draws guidance from *Benavides v. Gartland*, a recent decision from the Southern District of Georgia. In *Benavides*, detainees at the Folkston ICE Facility filed a motion for temporary restraining order, which was treated as a motion for a preliminary injunction, based on the facility's response to the COVID-19 pandemic. No. 5:20-cv-46, 2020 WL 2561777, at *1 n.1 (S.D. Ga. May 20, 2020). The district court denied the motion for injunctive relief. *Id*. The plaintiffs then filed a second motion for injunctive relief and a request for expedited discovery in the form of interrogatories and an on-site inspection. *Id*. at * 1. In considering the third factor, the district court wrote:

> [I]t appears that Petitioners seek expedited discovery only to bolster positions they already contend are supported by evidence. The fact that Petitioners are seeking

14

> cumulative evidence to support their second motion for preliminary injunction cuts against good cause for the proposed expedited discovery. On the other hand, Petitioners have raised challenges concerning serious medical issues, and much information related to Petitioners' claims is exclusively within Respondents' possession and control. These observations are true for Petitioners' request for an inspection and their request to propound interrogatories.

*Id.* at *3.

First, while the requested discovery here may touch on the merits of the case, its purpose is not to support the merits of the plaintiffs' case. Rather, the purpose of the requested discovery is to support the expected motion for injunctive relief.

Second, contrary to the defendants' contentions, there is no indication such would be futile. Like the plaintiffs in *Benavides*, the plaintiffs here seem to seek expedited discovery to bolster already-detailed factual allegations (albeit allegations not made in a preliminary injunction motion).[4] *See* Doc. #129 at 6–9. However, also like *Benavides*, the plaintiffs' motion for expedited discovery raises "challenges concerning serious medical issues" and relates to information exclusively within the defendants' possession and control. 2020 WL 2561777, at *3. Under these circumstances, the Court finds the third factor to weigh slightly in favor of good cause.

### 4. Factor 4: burden on defendants

The defendants argue that the sixteen discovery requests "amount to over 60, for each contains multiple subparts and are directed at several individuals and groups." Doc. #136 at 28. The defendants represent that the requested response period for the documents—five to seven days—is an "arduous request." *Id.* at 29. The plaintiffs contend that "[i]f Defendants were, in fact, complying with the representations made to this Court and with public health guidelines as they so adamantly assert, the information Plaintiffs seek should be readily available for production." Doc. #137 at 5.

---

[4] While the plaintiffs argue they need more evidence prior to filing their motion for injunctive relief, they also contend that "[b]ased on the limited information available to Plaintiffs, Defendants are not responding to the entrance of the virus into the facility in a manner that sufficiently mitigates the risk to Named Plaintiffs." Doc. #129 at 2.

15

To be sure, much of the information the plaintiffs seek should exist *somewhere*. However, the fact that the documents exist does not mean that the documents would not be difficult to produce. The defendants are correct that the plaintiffs effectively seek sixty categories of information for an untold number of inmates and staff. This type of "wide-ranging investigation for documents and things," ordinarily weighs the fourth factor against good cause. *MedImpact Healthcare Sys., Inc. v. IQVIA Holdings, Inc.*, No. 19cv1865, 2019 WL 6310554, at *4 (S.D. Cal. Nov. 25, 2019); *see also Adams*, 2020 WL 1271772, at *2 (finding burden on defendant weighed against discovery request where the defendant would have "to identify, assemble, and produce, in only a seven-day period, countless documents as well as forensic copies of electronic devices (including his personal phone and work computer owned by his new employer)"). This is particularly true where, as here, the plaintiffs seek a response in a short period of time. However, as with the second factor, the concerns regarding unduly burdensome requests may be alleviated by allowing the non-moving party a sufficient opportunity to formally object to the discovery and have such objections addressed by the Court. *Morrison*, 2020 WL 4547885, at *4. Because the Court will permit an objection opportunity, the fourth factor also weighs in favor of good cause.

### 5. *Factor 5: how far in advance of typical discovery*

The fifth factor weighs against a finding of good cause when the discovery "comes far in advance of normal discovery." *Attkisson*, 113 F. Supp. 3d at 162. Here, the defendants have not yet answered the complaint (and need not do so until the Court resolves the plaintiffs' emergency motion for temporary restraining order and preliminary injunction).[5] Accordingly, it is well in advance of normal discovery. The fifth factor, therefore, weighs against good cause.

### 6. *Balancing*

Although a close call, the Court concludes that the plaintiffs are entitled to expedited

---

[5] *See* Doc. #51.

discovery but that the defendants are entitled to file formal objections to such requests.

### E. Specific discovery requests under Rule 26

While the defendants challenge the individual requests under Rule 26, they do so in a broad fashion and without specific objections to each request. Doc. #136 at 19–21. The plaintiffs' response to these arguments are similarly conclusory. *See* Doc. #137 at 9–10. Because the defendants will be allowed an opportunity to formally object to the discovery requests, the Court declines to address the parties' cursory arguments at this time.

### III
### Conclusion

For the reasons explained above, expedited discovery is warranted on the plaintiffs' anticipated motion for preliminary injunction but such discovery must proceed in compliance with the general rules of civil procedure. Accordingly, the plaintiffs' proposed discovery is deemed served as of this date. The defendants shall respond to such discovery within fourteen days of this order. Should the defendants object to the discovery, the plaintiffs may file an appropriate motion to compel. If the plaintiffs file a motion to compel,[6] the defendants shall respond within seven days. The plaintiffs may reply within five days.

The motion for expedited discovery [128] is thus **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent it seeks leave to conduct expedited discovery and to deem the requested discovery served as of the date of this order. It is DENIED in all other respects.

**SO ORDERED**, this 25th day of August, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[6] Any motion to compel must be accompanied by the good faith certificate required by Federal Rule of Civil Procedure 37(a)(1).

17